BOARD OF REGENTS OF THE UNIVERSITY OF THE
STATE OF NEW YORK ET AL. *v.* TOMANIO

No. 79–424.   Argued February 26, 1980—Decided May 19, 1980

Rehnquist, J., delivered the opinion of the Court, in which Burger, C. J., and Stewart, White, Blackmun, and Powell, JJ., joined. Stevens, J., filed an opinion concurring in the result, *post*, p. 492. Brennan, J., filed a dissenting opinion, in which Marshall, J., joined, *post*, p. 494.

*Donald O. Meserve* argued the cause for petitioners. With him on the brief was *Jean M. Coon.*

*Vincent J. Mutari* argued the cause and filed a brief for respondent.

Mr. Justice Rehnquist delivered the opinion of the Court.

We granted certiorari in this case, 444 U. S. 939, to review a judgment of the Court of Appeals for the Second Circuit

holding that petitioners, the Board of Regents of the University of the State of New York and the Commissioner of Education, were required by the Fourteenth Amendment to the United States Constitution, to afford a hearing to respondent, Mary Tomanio, before denying her request for a waiver of professional licensing examination requirements. In so doing, the Court of Appeals rejected petitioners' claims that both the statute of limitations and the doctrine of estoppel by judgment barred respondent's maintenance of an action under 42 U. S. C. § 1983 in the federal courts. We find it necessary to consider only the defense based on the statute of limitations, since the resolution of that issue is virtually foreordained in favor of petitioners by our prior cases when the indisputably lengthy series of events which ultimately brought this case here is described.

## I

Respondent has practiced chiropractic medicine in the State of New York since 1958. Prior to 1963, the State did not require chiropractic practitioners to be licensed. But in that year the State enacted a statute which required state licensing, and established three separate methods by which applicants could obtain a license to practice chiropractic in the State of New York. 1963 N. Y. Laws, ch. 780, codified as amended, N. Y. Educ. Law §§ 6506 (5), 6554, 6556 (McKinney 1972 and Supp. 1979–1980). First, the statute established education and examination requirements for applicants who had not previously engaged in chiropractic practice. An alternative qualifying examination was made available to individuals already engaged in practice in New York on the date that the licensing statute became effective. Finally, the Act established a third means for current practitioners to qualify without taking any state-administered examination. Under § 6506 (5), they could obtain a waiver of "education, experience and examination requirements for a professional license . . . provided the board of regents shall be satisfied

that the requirements of such article have been substantially met." [1]

Respondent has been unsuccessful in her efforts to obtain a license to practice in New York. On seven separate occasions between 1964 and 1971, she attempted to qualify by taking the special examinations designed for current practitioners. Respondent failed, by a narrow margin, to ever receive a passing score on the examinations.[2] After this series of failures, she applied to the Board of Regents for waiver of the examination requirements pursuant to § 6506 (5). This application was based upon her claim that she had failed the examinations by only a very narrow margin, that she was licensed in the States of Maine and New Hampshire, and that she had passed an examination given by the National Board of Chiropractic Examiners. On November 22, 1971, the Board notified respondent that they had voted to deny her application for a waiver at a meeting held on November 19. Respondent was not afforded an evidentiary hearing on the denial of the waiver or given a statement of reasons for it.

In January 1972, respondent commenced a proceeding in the New York state courts attacking the decision of the Board of Regents not to grant a waiver as arbitrary and capricious, and seeking an order directing the Board to license her. She did not raise any constitutional challenge to the Board's decision in this judicial proceeding. The trial court granted the requested relief, but its order was reversed by the Appellate Division. In November 1975, the New York State Court of Appeals affirmed the order of the Appellate Division holding that the Board of Regents had not abused their discretion in denying respondent's application for a waiver. *Tomanio* v. *Board of Regents*, 38 N. Y. 2d 724, 343 N. E. 2d 755 (1975),

---

[1] This waiver section is available to all applicants for professional licenses and not just those seeking admission to the practice of chiropractic.

[2] In 1972, respondent also took, and failed, the examinations administered to applicants without prior experience in practice.

aff'g 43 App. Div. 2d 643, 349 N. Y. S. 2d 806 (3d Dept. 1973).

Seven months later, on June 25, 1976, respondent instituted this action in Federal District Court under 42 U. S. C. § 1983. Respondent alleged that the refusal of petitioners to grant her a license to practice violated due process as guaranteed by the Fourteenth Amendment. Petitioners invoked res judicata and the statute of limitations as affirmative defenses to respondent's action.

The District Court rejected these defenses. First, the court found that res judicata would not bar consideration of a § 1983 claim in federal court if the constitutional claim was not actually litigated and determined in the prior state-court proceeding. Since respondent had not raised any constitutional challenge to the Board's action in state court, the trial court ruled that res judicata did not preclude the federal action.

The District Court also found that the § 1983 action was not barred by the statute of limitations. Respondent's claim arose in November 1971 when her application for waiver was denied, more than three years prior to the date on which the suit in federal court was commenced. Although the District Court found that a 3-year New York statute of limitations was applicable to respondent's action, the court held that it was appropriate to toll the running of that statute during the pendency of her state-court litigation. Relying on *Mizell* v. *North Broward Hospital District,* 427 F. 2d 468 (CA5 1970), the judge concluded that a federal tolling rule was appropriate, reasoning that

> "[i]n my judgment, the present overburdening of the federal courts and the increased filings of civil rights complaints are factors that mitigate in favor of encouraging the utilization of effective and feasible administrative and judicial remedies, which exist under state law, in certain situations."

Since respondent had diligently pursued her state-court

remedy after the denial of waiver, and then diligently pursued her federal action after a final dismissal of her state-law claims in the New York State Court of Appeals, the judge found that "it cannot be said that plaintiff has slept on her rights." On the merits of the federal constitutional claim, the District Court found that respondent was entitled to a hearing before the Board, relief which was more limited than she had sought. The Court of Appeals for the Second Circuit affirmed the District Court in its rejection of estoppel by judgment and the statute of limitations defense, finding that the tolling of the statute was justified "in the interests of advancing the goals of federalism." 603 F. 2d 255. The court also agreed with the ruling of the District Court that respondent was entitled, as a matter of federal constitutional law, to a hearing before the Board on her eligibility for waiver of the examination requirements.

In unraveling this tangle of federal and state claims, and federal- and state-court judgments, we have decided that the case is best disposed of by resolving the statute of limitations question, which we believe has been all but expressly resolved against the respondent by our decisions in *Robertson* v. *Wegmann*, 436 U. S. 584 (1978); *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454 (1975); and *Monroe* v. *Pape*, 365 U. S. 167 (1961). Under the reasoning of these decisions, the federal courts were obligated not only to apply the analogous New York statute of limitations to respondent's federal constitutional claims, but also to apply the New York rule for tolling that statute of limitations.

## II

Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983—a void which is commonplace in federal statutory law. When such a void occurs, this Court has repeatedly "borrowed" the state law of limitations governing an analo-

gous cause of action.[3]  Limitation borrowing was adopted for civil rights actions filed in federal court as early as 1914, in *O'Sullivan* v. *Felix,* 233 U. S. 318.  Although the Court of Appeals found that respondent's action was governed by a 3-year New York statute of limitations,[4] the court did not apply the New York rules governing the circumstances under which that statute of limitations could be tolled.

In § 1983 actions, however, a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible.  In most cases, they are binding rules of law.  In 42 U. S. C. § 1988, Congress "quite clearly instructs [federal courts] to refer to state statutes" when federal law provides no rule of decision for actions brought under § 1983.[5]  *Robertson* v. *Wegmann, supra.*  See

---

[3] See, *e. g.,* the authorities cited in *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454, 462 (1975).

[4] The Court of Appeals for the Second Circuit established a number of years ago that New York's 3-year time limitation for actions "to recover upon a liability, penalty or forfeiture created or imposed by statute," N. Y. Civ. Prac. Law § 214 (2) (McKinney Supp. 1979–1980), governs § 1983 actions brought in Federal District Court in New York.  *Romer* v. *Leary,* 425 F. 2d 186 (1970); *Meyer* v. *Frank,* 550 F. 2d 726, cert. denied, 434 U. S. 830 (1977).  While petitioners suggest that § 217 (McKinney 1972) of the New York statutes of limitations, requiring the commencement of proceedings to review administrative action within four months, more appropriately governs this action, we need only hold that the Court of Appeals erred by tolling the 3-year limitation.  The respondent does not maintain that a limitation period longer than three years governs this action.  Thus we may assume for the purposes of this opinion that the 3-year period was applicable since respondent is in any event barred.

[5] Section 1988 provides:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this [Chapter and Title 18], for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses

also *Carlson* v. *Green, ante,* at 22, n. 10. As we held in *Robertson,* by its terms, § 1988 authorizes federal courts to disregard an otherwise applicable state rule of law only if the state law is "inconsistent with the Constitution and laws of the United States."

In another action subject to § 1988, we held that the state statute of limitations and the state tolling rules governed federal actions brought under 42 U. S. C. § 1981 except when "inconsistent with the federal policy underlying the cause of action under consideration." *Johnson* v. *Railway Express Agency, Inc., supra,* at 465. We there restated the general principle that since there was no specifically stated or otherwise relevant federal statute of limitations for the federal substantive claim created by Congress in that case, "the controlling period would ordinarily be the most appropriate one provided by state law." 421 U. S., at 462, and cases cited therein. We went on to observe that this "borrowing" logically included rules of tolling:

> "Any period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action. Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling,

---

against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." *Id.,* at 463-464.

As *Robertson* and *Johnson* make clear, therefore, resolution of this case requires us to identify the New York rule of tolling and determine whether that rule is "inconsistent" with federal law.

## III

New York has codified the limitations of actions and the circumstances under which those limitations can be tolled together. N. Y. Civ. Prac. Law §§ 201-218 (McKinney 1972 and Supp. 1979-1980). The general rule is set forth unambiguously in § 201 (McKinney 1972): "An action . . . must be commenced within the time specified in this article. . . . No court shall extend the time limited by law for the commencement of an action." The statute codifies a number of the tolling rules developed at common law.[6] No section of the law provides, however, that the time for filing a cause of action is tolled during the period in which a litigant pursues a related, but independent cause of action.[7] If a plaintiff wishes to pursue his claims in succession, rather than concurrently, the legislature has required the plaintiff either to obtain a

---

[6] See, *e. g.,* § 207 (McKinney 1972) (tolling during defendant's absence from State or residence under false name); § 208 (McKinney Supp. 1979-1980) (tolling during period in which plaintiff is under a disability such as infancy, insanity, or imprisonment).

[7] Section 204 (b) does provide that if a plaintiff attempts to submit a claim for arbitration, but it is ultimately held that there is no obligation to arbitrate, the limitations period will not run during the time between the date of demand and the date of the judgment providing that arbitration is unavailable. This section does not provide for general tolling during arbitration, but only in situations where the plaintiff is unable to obtain an adjudication on the merits because the remedy is legally unavailable.

judicial stay of the time for commencing an action, or to litigate at risk. See § 204. The New York Legislature has apparently determined that the policies of repose underlying the statute of limitations should not be displaced by whatever advantages inure, whether to the plaintiff or the system, in a scheme which encourages the litigation of one cause of action prior to another.

Respondent's failure to comply with the New York statute of limitations, therefore, precluded maintenance of this action unless New York's tolling rule is "inconsistent" with the policies underlying § 1983.[8] In order to gauge consistency, of course, the state and federal policies which the respective legislatures sought to foster must be identified and compared. On many prior occasions, we have emphasized the importance of the policies underlying state statutes of limitations. Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system. Making out the substantive elements of a claim for relief involves a process of pleading, discovery, and trial. The process of discovery and trial which results in the finding of ultimate facts for or against the plaintiff by the judge or jury is obviously more reliable if the witness or testimony in question is relatively fresh. Thus in the judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious. By the same token, most courts and legislatures have recognized that there are factual circumstances which justify an exception to these strong policies of repose. For example, defendants may not, by tactics of evasion, prevent the plaintiff from litigating the merits of a claim, even though

---

[8] We note that respondent does not maintain that any provision of New York law operated to toll the statute of limitations.

on its face the claim is time-barred. These exceptions to the statute of limitations are generally referred to as "tolling" and, as more fully discussed in *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454 (1975), are an integral part of a complete limitations policy.

The importance of policies of repose in the federal, as well as in the state, system is attested to by the fact that when Congress has provided no statute of limitations for a substantive claim which is created, this Court has nonetheless "borrowed" what it considered to be the most analogous state statute of limitations to bar tardily commenced proceedings. *Supra*, at 483–484. This is obviously a judicial recognition of the fact that Congress, unless it has spoken to the contrary, did not intend by the mere creation of a "cause of action" or "claim for relief" that any plaintiff filing a complaint would automatically prevail if only the necessary elements of the federal substantive claim for relief could be established. Thus, in general, state policies of repose cannot be said to be disfavored in federal law. Nonetheless, it is appropriate to determine whether Congress has departed from the general rule in § 1983.

In *Robertson* v. *Wegmann*, 436 U. S. 584 (1978), the Court first emphasized that "a state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant." *Id.*, at 593. The Court went on to identify two of the principal policies embodied in § 1983 as deterrence and compensation. Neither of these policies is significantly affected by this rule of limitations since plaintiffs can still readily enforce their claims, thereby recovering compensation and fostering deterrence, simply by commencing their actions within three years.

Uniformity has also been cited as a federal policy which sometimes necessitates the displacement of an otherwise applicable state rule of law. *Carlson* v. *Green, ante,* p. 14; *Occidental Life Ins. Co. of California* v. *EEOC,* 432 U. S. 355, 362 (1977). The need for uniformity, while paramount under some federal statutory schemes, has not been held to warrant the displacement of state statutes of limitations for civil rights actions. *Johnson* v. *Railway Express Agency, Inc., supra.* In *Robertson* v. *Wegmann, supra,* we held:

> "[W]hatever the value of nationwide uniformity in areas of civil rights enforcement where Congress has not spoken, in the areas to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues." 436 U. S., at 594, n. 11.

The Court of Appeals and the District Court in this case apparently believed that policies of federalism would be undermined by the adoption of the New York tolling rule since litigants would not be encouraged to resort to state remedies prior to the maintenance of a federal civil rights action under § 1983. The conclusion of the lower courts that this result would be "inconsistent" with federal law is at odds with the reasoning in our prior opinions in this field as well as at odds with federalism itself.

On several prior occasions, we have reasoned that when Congress intended to establish a remedy separate and independent from other remedies that might also be available, a state rule which does not allow a plaintiff to litigate such alternative claims in succession, without risk of a time bar, is not "inconsistent." In *Johnson* v. *Railway Express, supra,* the Court found that a state rule which did not toll the statute of limitations applicable to a claim under 42 U. S. C. § 1981 during the pendency of a charge under Title VII of the Civil

Rights Act of 1964 filed with the Equal Employment Opportunity Commission, was not inconsistent with § 1981 because Congress had "retained § 1981 as a remedy . . . separate from and independent of the . . . procedures of Title VII." 421 U. S., at 466. The Court premised its conclusion that Title VII and § 1981 were separate and independent on the fact that Congress had not required resort to Title VII as a prerequisite to an action under § 1981 and did not "expect that a § 1981 court action usually would be resorted to only upon a completion of Title VII procedures. . . ." 421 U. S., at 461. Adopting the same reasoning, we held in *Electrical Workers* v. *Robbins & Myers, Inc.,* 429 U. S. 229 (1976), that it would not be inconsistent with Title VII to decline to toll the statute of limitations during labor grievance or arbitration procedures *because* "contractual rights under a collective-bargaining agreement and the statutory right provided by Congress under Title VII 'have legally independent origins and are equally available to the aggrieved employee.'" *Id.,* at 236, quoting *Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36, 52 (1974). Applying the converse of this reasoning, this Court found in *Occidental Life Ins. Co. of California* v. *EEOC, supra,* that it *would* be inconsistent with federal law to apply a state statute of limitations to actions instituted by the EEOC under Title VII since the EEOC was "required by law to refrain from commencing a civil action until it ha[d] discharged its administrative duties." 432 U. S., at 368.

The District Court's conclusion that state remedies should be utilized before resort to the federal courts may be an entirely sound and sensible observation, but in our opinion it does not square with what must be presumed to be congressional intent in creating an independent federal remedy. Unless that remedy is structured to require previous resort to state proceedings, so that the claim may not even be maintained in federal court unless such resort be had, see *Love* v. *Pullman Co.,* 404 U. S. 522 (1972), it cannot be assumed that Congress wishes to hold open the independent federal remedy

during any period of time necessary to pursue alternative state-court remedies. It is difficult to conclude that a state policy of repose which likewise does not encourage litigants to resort to other available remedies is inconsistent with such congressional intent. We find the congressional intent here to be virtually indistinguishable from that found in *Johnson* v. *Railway Express, supra,* and *Electrical Workers* v. *Robbins & Myers, Inc., supra,* to be consistent with a rule prohibiting tolling.

As in those cases, there is no question that respondent's § 1983 action was "separate and independent" from the state judicial remedy pursued in state court.[9] This Court has not interpreted § 1983 to require a litigant to pursue state judicial remedies prior to commencing an action under this section. In *Monroe* v. *Pape,* 365 U. S., at 183, we held: "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Thus the very independence of § 1983 reveals that the New York rule precluding tolling in the circumstances of this case is not "inconsistent" with the provisions of § 1983.

Finally, we do not believe that this construction of congressional intent is overridden, as the Court of Appeals found, "in the interests of advancing the goals of federalism." We believe that the application of the New York law of tolling is in fact more consistent with the policies of "federalism" invoked by the Court of Appeals than a rule which displaces

---

[9] The remedy pursued by plaintiff in state court was a state judicial remedy authorizing actions against administrative bodies to review "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion. . . ." N. Y. Civ. Prac. Law § 7803 (McKinney 1963). While the parties and the courts below were in agreement that a constitutional challenge to the agency action could have been brought under Art. 78, only the state-law claims were pursued by respondent in that proceeding.

the state rule in favor of an ad hoc federal rule. The result reached by the District Court and Court of Appeals might encourage more plaintiffs with both state and federal constitutional claims to initially bring an action in the state courts. But it would just as surely frustrate the often complex combination of limitations and tolling provisions enacted by the State in question. While New York might have chosen a tolling rule designed to encourage prior resort to state-law remedies, it has not. Here New York has expressed by statute its disfavor of tolling its statute of limitations for one action while an independent action is being pursued. Considerations of federalism are quite appropriate in adjudicating federal suits based on 42 U. S. C. § 1983. See, *e. g., Younger* v. *Harris,* 401 U. S. 37 (1971). But the Court of Appeals' rule allowing tolling can scarcely be deemed a triumph of federalism when it necessitates a rejection of the rule actually chosen by the New York Legislature.

Since we therefore hold that respondent's action was barred by the New York statute of limitations, we find it unnecessary to reach petitioners' other contentions. The judgment of the Court of Appeals is accordingly

*Reversed.*

Mr. Justice Stevens, concurring in the result.

The federal claim asserted by respondent was that New York had deprived her of the right to practice her profession without the due process of law required by the Fourteenth Amendment to the United States Constitution.[1] The New York proceedings that ultimately determined that she had no such right as a matter of state law were not concluded until November 1975. Since her federal action was filed only seven months later, I believe it was timely, though for somewhat different reasons than those stated by the Court of Appeals.

---

[1] "[N]or shall any State deprive any person of life, liberty, or property, without due process of law. . . ." U. S. Const., Amdt. 14, § 1.

Having relied on developments in the state-court litigation to defend the merits of respondent's due process challenge,[2] I would not permit the State simultaneously to contend that all aspects of the federal controversy had crystalized before respondent sought review in the state court system. Cf. *Bonner* v. *Coughlin,* 517 F. 2d 1311, 1319 (CA7 1975), modified, 545 F. 2d 565 (1976) (en banc), cert. denied, 435 U. S. 932. As the Court notes, *ante,* at 491, a litigant is not required to exhaust state remedies before bringing a § 1983 action in federal court. *Monroe* v. *Pape,* 365 U. S. 167, 183. But I would not penalize a litigant who decides to bring suit in the state courts first; for such a decision gives the State an opportunity to correct, through construction of state law, a potential constitutional error, and may obviate entirely any need to present the claim to a federal court. It would also make no sense to me in terms of either federalism or judicial administration to require a litigant who files an action in state court to proceed simultaneously in federal court in order to avoid a time bar. I therefore disagree with the Court's holding that respondent's claim is barred by limitations.[3]

On the merits, however, I am not persuaded that New York's licensing procedure is unfair. Examinations are a permissible method of determining qualifications, and lines must be drawn somewhere. The fact that respondent was just short of the passing mark does not raise any federal question. Indeed, respondent does not claim that the examination itself denied her due process. And I agree with Judge Lumbard, who dissented in the Court of Appeals, that the fact that

---

[2] Petitioners rely on the papers in the New York action as having provided respondent with an adequate statement of the reasons for the denial of a waiver. See Brief for Petitioners 4.

[3] Even if I agreed with the view that the federal claim was complete in November 1971 when respondent's application for a waiver was denied, I would remand to the Court of Appeals to determine the state-law tolling issue rather than have this Court decide that state-law question in the first instance.

New York has provided for a waiver in the discretion of the Board of Regents does not substantially change the State's licensing procedure. Respondent was given an adequate opportunity to advise the Board of the reasons why she should receive a waiver and she ultimately received an adequate explanation for the refusal. She does not allege that others who have failed the examination have obtained a waiver, or, indeed, any facts suggesting any arbitrariness in the New York procedure.

In short, I find no merit in respondent's constitutional challenge and would reverse for that reason.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

I cannot agree with the Court that respondent's federal action is time-barred. In my view, when applied to these facts the New York statute of limitations and tolling rules are "inconsistent with the Constitution and laws of the United States," and thus should not be "extended to . . . govern" respondent's suit. 42 U. S. C. § 1988.

While the precise content of New York's statute of limitations and tolling rules is not crucial to my analysis, I think it appropriate to note that the Court's conclusion that respondent's action would be time-barred under state law is far from persuasive. The Court relies heavily upon the absence of any provision that expressly tolls the statute of limitations "during the period in which a litigant pursues a related, but independent cause of action," *ante,* at 486.[1] I would not attach controlling significance to the absence of particular statutory language. Nor would I conclude on the basis of that absence that New York had consciously determined "that the policies of repose underlying the statute of

---

[1] The Court also makes reference to respondent's failure to "maintain that any provision of New York law operated to toll the statute of limitations." *Ante,* at 487, n. 8.

limitations should not be displaced by whatever advantages inure, whether to the plaintiff, or the system, in a scheme which encourages the litigation of one cause of action prior to another." *Ante,* at 487. Legislative silence is simply not that communicative.[2] Indeed, there may be no New York rule that actually deals with the present situation. That State has a unitary court system, and in consequence its judges and legislators are unlikely to have focussed upon the filing in two different court systems of two different suits dealing with the same transaction or occurrence. Further, the situation upon which they probably have focussed—the filing in a single system of two consecutive suits—would not really be analogous because there would be no conceivable reason for separating the actions. Moreover, even in that case it is not clear that state lawmakers would expect to derail the second action by applying the statute of limitations. On the contrary, the doctrine of res judicata would seem a more probable reason for dismissal.[3] In sum, I think the precise content of state law when applied to a case such as the present one is sufficiently opaque to render any supposition as to what state policies are at stake extremely speculative.[4]

More broadly, I would not find respondent's § 1983 action time-barred even were I confident that application of the New York rules would produce that result. *Monroe* v. *Pape,* 365 U. S. 167, 183 (1961), settled that the plaintiff in a § 1983 case need not resort to state judicial remedies prior to filing a federal suit. There are, however, circumstances in

---

[2] Cf. Powell, The Still Small Voice of the Commerce Clause, in 3 Selected Essays on Constitutional Law 931, 932 (1938).

[3] See *Winters* v. *Lavine,* 574 F. 2d 46, 56 (CA2 1978) (citing New York cases).

[4] If the Court is persuaded that state law should govern, I agree with Mr. Justice Stevens that it would be appropriate to seek the advice of the Court of Appeals as to the precise content of the state rule as applied to facts such as these. *Ante,* at 493, n. 3.

which this Court has decided that a federal determination may be delayed pending resolution of certain state-law issues, see *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496 (1941). Beyond that, even in cases not technically within the abstention doctrine, advantages may be realized from permitting the state courts to decide claims that state administrative determinations were arbitrary, capricious, or otherwise contrary to state law. Accordingly, I can conceive of situations in which a plaintiff in a case like the present one might resort initially to state courts either under the view that he would be required to do so by the abstention doctrine or because doing so, while not compulsory, would be a more efficacious way of resolving his claim. Either reason strikes me as entirely legitimate.[5] Abstention decisions are presumably there to be read by plaintiffs as well as district courts, and permitting plaintiffs to act upon them might spare the federal courts some unnecessary work. More generally, where the plaintiff voluntarily concludes that it is worth the time and money, resort to state judicial review under state law would not be inconsistent with *Monroe* v. *Pape, supra,* and could both reduce strains on federal-state relations and ease the task facing the district courts that must eventually resolve those cases not settled in state proceedings.

While I believe the foregoing benefits may be substantial, I think it vital to ensure that they are not obtained at the expense of the plaintiff's right ultimately to try his federal claims in a federal forum. Thus, while I recognize that a plaintiff may be bound by a deliberate choice to present both state and federal claims to the state court, I would not be too quick to find that such a choice has been made. In the present case, there is no indication that respondent had any intention of relinquishing her right to a federal forum, and I would eschew any course that in effect forces her to do so.

---

[5] In this regard, too, I am in agreement with my Brother Stevens. See *ante,* at 493.

In consequence, on these facts I would think it inconsistent with federal law and the Constitution to enforce state timing or res judicata rules that close the door of the federal courthouse.

In the abstention context, *England* v. *Louisiana State Board of Medical Examiners,* 375 U. S. 411 (1964), sets forth a procedure for preserving a plaintiff's right to a federal forum for his federal claims while giving effect to the concerns and policies underlying *Railroad Comm'n* v. *Pullman Co., supra.* Under that procedure, a plaintiff remitted to state court may file a formal reservation in that court preserving his federal claims. If he does so, he can litigate those claims on his return to federal court. If he fails to do so, he risks being held to have submitted all his claims to the state court. It seems to me that the present case is in many respects simply a variation of the basic *England* situation. Accordingly, I believe that a similar reservation procedure would be appropriate here. Permitting a plaintiff to reserve his federal claims would make the choice to litigate state claims in state court a palatable one; and where that choice is exercised the parties and system alike may benefit. Further, requiring that plaintiffs who want to make such a reservation do so expressly would supply a relatively simple means of preventing the relitigation of claims submitted to and decided by state courts.[6]

---

[6] Curiously, the Court's decision regarding the New York statute of limitations could have a broadly parallel effect. As I understand it, the Court would simply require plaintiffs either to lodge a federal complaint in federal court before the limitations period expires or to obtain an order from the state court tolling the running of that period. Either step would put the State on notice that a federal constitutional challenge loomed, cf. *Government Employees* v. *Windsor,* 353 U. S. 364 (1957), and, assuming that the Court would not give effect to the state res judicata rules, either would ultimately permit plaintiffs in future cases to raise their federal claims in federal forums. Thus, while I am not persuaded by the Court's reasoning, and while I think the result in this particular case anomalous, the overall effect of the Court's rule may be satisfactory.

While I would impose a reservation requirement on cases like this for the future, I would not be inclined to do so on the present facts for reasons akin to those that led us to make *England* itself prospective. 375 U. S., at 421–423. Specifically, there is no reason why respondent should have anticipated that she would be required to reserve her federal questions. On the contrary, I think she could reasonably have assumed that so long as her federal claims were not raised or decided in state court she could try them in a subsequent § 1983 action.[7] I would give effect to that assumption and make the reservation requirement wholly prospective.[8]

---

[7] In 1970 the Court of Appeals for the Fifth Circuit concluded that a state statute of limitations would be tolled in such a situation. *Mizell* v. *North Broward Hospital District*, 427 F. 2d 468, 473–474. The Court of Appeals for the Second Circuit apparently had not ruled on this precise issue at the time of respondent's suit, although it had held that New York's res judicata and collateral estoppel rules would not bar a federal civil rights suit dealing with issues not actually litigated in a prior state-court suit, *Ornstein* v. *Regan*, 574 F. 2d 115 (1978); *Lombard* v. *Board of Education*, 502 F. 2d 631, 635–637 (1974).

[8] Even were the *England* requirement fully applicable, respondent's failure to make an express reservation might not be dispositive on these facts. Normally the reservation rule will serve two functions—it will force the plaintiff to declare his intentions, and thus keep him from getting two chances to litigate a single claim, and it will put the parties and the state court on notice that there lurks a constitutional issue. Here the first purpose is not implicated because respondent's federal claims were not litigated in state court. And while it may be appropriate to hold that a plaintiff who fails to reserve federal claims will be bound by a state court's actual determination of those claims, the proper result where a failure to reserve has led only to silence on the federal issue is less obvious. *Government Employees* v. *Windsor, supra,* for example, merely concluded that a state-law determination made without warning or discussion of related constitutional claims was inadequate and ordered a remand to give the state courts an opportunity to construe their statute in a different manner. 353 U. S., at 366. Neither party has requested such a disposition here, and I am not convinced that one would be appropriate. But it does seem that the consequence of failure to reserve in the present

Because I think the importation of either the state statute of limitations or its estoppel-by-judgment rule would be inconsistent with federal law and the Constitution, I would reach the merits. The courts below were of the view that the licensing scheme in general and the waiver provisions in particular conferred on respondent some minimal property right. I see no reason to second-guess that determination.[9] As a result, it is axiomatic that some procedural protections are required by the Due Process Clause. The extent of those protections is a difficult question, and I think the Court of Appeals may have gone too far when it ordered an adjudicative hearing. It does, however, seem quite clear that at minimum respondent was entitled to a statement of the reasons for her rejection. Further, I cannot agree with MR. JUSTICE STEVENS that this requirement was satisfied by the statement given by the Board in its answer to respondent's original complaint. Respondent's right was to receive a statement of reasons when a waiver was denied, not upon her resort to state judicial remedies.[10] As a result, I would affirm the Court of Appeals insofar as it held that respondent was entitled as a matter of federal constitutional law to some additional procedures, but would reverse insofar as that court held that she was entitled to a full adjudicative hearing. Accordingly, I dissent.

---

context need not be a complete bar to pursuit of respondent's federal claims in federal court.

[9] In the wake of *Bishop* v. *Wood,* 426 U. S. 341, 347 (1976), it is clear that such second-guessing will rarely if ever be appropriate.

[10] Cf. *Home Telephone & Telegraph Co.* v. *Los Angeles,* 227 U. S. 278 (1913).