Robert E. HAWTHORNE,
Plaintiff-Appellant,

v.

Mr. WELLS, Unit Manager,
Defendant-Appellee.

No. 83–8164
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

June 4, 1985.

Robert E. Hawthorne, pro se.

Nina L. Hunt, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

PER CURIAM:

The issue in this case is whether the Georgia statute tolling the limitations period for prisoners applies to toll the limitations period for federal inmates suing federal prison authorities, under a *Bivens* cause of action, for unconstitutional deprivations inflicted during their incarceration. We hold that it does not.

## FACTS

Plaintiff-appellant, appearing *pro se,* filed a *Bivens* [1] action in the United States District Court for the Northern District of Georgia, alleging that a federal prison offi-

---

1. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

cial violated his constitutional rights under color of federal law.[2] The defendant moved for dismissal, asserting that the action was time-barred under Georgia Code § 3-1004, which limits actions for injuries to the person to those brought within two years of accrual of the action.[3] The plaintiff-appellant opposed dismissal, arguing that the limitations provision of the statute was tolled by Georgia Code § 3-801, which provides

> [i]nfants, idiots, or insane persons, or persons imprisoned, who are such when the cause of action shall have accrued, shall be entitled to have the same time, after the disability shall have been removed, to bring an action, as is prescribed for other persons.

The district court held for the defendant and dismissed the suit.

█ Appellant appealed.[4] Upon consideration, this court noted that the Georgia Supreme Court has held section 3-801 to be valid law in Georgia,[5] and that the Eleventh Circuit has held that section 3-801 applies to toll the running of limitations on section 1983 civil rights actions brought by Georgia prisoners against Georgia prison authorities.[6] *Hawthorne v. Wells*, No. 83-8164, slip op. at 3 (11th Cir. Oct. 31, 1984) (order requesting supplemental briefing). We pointed out that under *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), the Georgia tolling statute must also be applied to the instant action involving federal prisoners and federal prison officials, unless it would be inconsistent with federal policy to do

so.[7] *Hawthorne*, slip op. at 3-4. We determined that further briefing would be helpful on this question of inconsistency and asked the parties to submit supplemental briefs, *id.* at 4, which briefs we subsequently received and have considered.

## DISCUSSION

To determine whether it would be inconsistent with federal policy to apply the Georgia tolling statute here, we must first identify the state and federal policies involved. *Tomanio*, 446 U.S. at 487, 100 S.Ct. at 1796. Georgia's prisoner tolling statute derives from the common law doctrine that a convicted felon is *civiliter mortuus* and thus may not sue. *Heard v. Caldwell*, 364 F.Supp. 419, 421 (S.D.Ga. 1973). The policy behind the statute, which has been part of Georgia statutory law since 1767, is to ensure prisoners access to the courts to bring those actions that accrue during their imprisonment.

The federal policies involved include those underlying the *Bivens* action, which is a private federal cause of action against federal officials for unconstitutional conduct. These policies are to compensate those who are injured by the unconstitutional abuses of federal officials, and to deter such abuse. *See Zerilli v. Evening News Association*, 628 F.2d 217, 224 (D.C. Cir.1980). In addition, there is a federal policy to limit exposure of federal defendants to claims brought within a reasonable period of time. *See Tomanio*, 446 U.S. at 488, 100 S.Ct. at 1797 (noting importance of policy of repose in the course of determin-

---

2. The complaint alleged unconstitutional confinement with an insane inmate who started a fire in the cell, and sought recovery for the consequent injuries to the plaintiff.

3. *See* footnote 7.

4. This court appointed counsel to aid appellant on appeal. Appellant objected to the appointment of counsel, requested that counsel remove himself from the case, and moved this court to rescind the order appointing counsel. This was done.

5. *Turner v. Evans*, 251 Ga. 486, 306 S.E.2d 921 (1983).

6. *Turner v. Evans*, 721 F.2d 341 (11th Cir.1983).

7. Where Congress has provided no limitations period for a federal claim, as is the case for a *Bivens* action, a court must borrow the applicable limitations period and tolling rules from the state in which it sits, unless those rules are inconsistent with federal policy. *Tomanio*, 446 U.S. at 483-86, 100 S.Ct. at 1794-96. *See also Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914).

ing whether to apply a tolling rule). As the Supreme Court explained in *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979), in which the Court interpreted a two-year federal statute of limitations,

> [s]tatutes of limitations, which 'are found and approved in all systems of enlightened jurisprudence,' *Wood v. Carpenter* [11 OTTO 135, 139], 101 U.S. 135, 139 [25 L.Ed.2d 807] (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349 [64 S.Ct. 582, 586, 88 L.Ed. 788] (1944). These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*Cf. Tomanio,* 446 U.S. at 488, 100 S.Ct. at 1797 ("The importance of policies of repose in the federal ... system is attested to by the fact that when Congress has provided no statute of limitations for a substantive claim ..., this Court has nonetheless 'borrowed' ... the most analogous state statute of limitations to bar tardily commenced proceedings").

Application of Georgia's tolling statute to this action would conflict with all of these federal policies. It would conflict with the federal policy of compensation and redress, underlying the *Bivens* action, because the Georgia statute is grounded on the premise that a prisoner cannot obtain such compensation and redress. Since all federal prisoners who suffer constitutional deprivations in a federal prison can, in fact, bring a *Bivens* action, and the purpose of the *Bivens* action is to afford federal prisoners redress for unconstitutional deprivations inflicted while they are in custody, it would be inconsistent with the very purpose of the action to base administering it on the premise that a federal prisoner is incapable of bringing the action.

█ It, of course, would be an entirely different matter were federal prisoners impeded in any way from instituting *Bivens* actions. But this is far from the case, at least where the unconstitutional deprivation occurs while the prisoner is incarcerated.[8] Federal prisoners have a constitutional right to adequate, effective and meaningful access to the courts, *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1212 (11th Cir.1981), and are as able to sue as any citizen. All prisoners, for example, have court-enforced access to legal research materials or assistance from persons trained in the law. *See Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Prison authorities also must allow an inmate a reasonable amount of time to conduct legal research and prepare legal documents, and they must make copying facilities and typewriters available. 28 C.F.R. § 543.11(a), (g), (h) (1984). Further, prisoners often qualify for *in forma pauperis* status, entitling them to file and prosecute their lawsuits without paying court costs, and, in some cases, to free legal counsel. 28 U.S.C. § 1915(a), (d). All of this, and more, has been established for the benefit of the prisoner who in a custodial setting has been deprived of a constitutional right. He has hence been elevated from the status of *civiliter mortuus* to that of a free citizen who has as much opportunity to seek redress in the courts as anyone else.

---

**8.** It might be that a prisoner who obtained a *Bivens* claim on account of unconstitutional deprivations inflicted by federal officials while he was in the free population and who is then incarcerated has lost so much of his ability to investigate and deal with that claim that his ability to institute a *Bivens* action is, in effect, impeded. However this is not the situation in the case now before us.

To apply the Georgia tolling statute here would be to presume that a *Bivens* action was not available to the federal prisoner and that a whole apparatus of access to the federal courts has not been established for his benefit. We are not willing to so presume, especially since the *Bivens* action is not only available to the federal prisoner, but created for the very purpose of redressing his injuries.

Application of the Georgia tolling statute also would be inconsistent with the policy of deterrence underlying the *Bivens* action. Constitutional abuses cannot be deterred by actions that lay dormant for innumerable years while a federal prisoner serves out his sentence. Nor can they be stopped immediately through injunctive relief if the prisoner waits until he has been released to bring the action.

Finally, application of the Georgia tolling statute would be inconsistent with the federal policy to limit exposure of federal defendants to claims brought within a reasonable period of time. As the district court explained in its order dismissing this action, this policy of repose, based in part on the need for reliable evidence, is particularly important in the context of *Bivens* actions brought by federal prisoners:

> [f]or many of the federal officials sued, the alleged constitutional abuse is merely one of hundreds of similar routine transactions that occur in the course of a year's time at the prison facility. For instance, a prison guard may conduct hundreds of searches and seizures in a twelve month period. Any one of these searches may give rise to a *Bivens* claim. A prison guard will probably not remember the details of one particular search five or ten years after the incident....

Record at 125. The Georgia tolling statute thus conflicts with the federal policy by "allow[ing] a prisoner ... to marshal his evidence while waiting for the memories of the potential defendant and his witnesses to fade and for prison records to be routinely destroyed." *Id.* And, the statute

creates the risk of loss of such evidence for no valid purpose since prisoners are no longer *civiliter mortuus*. *Turner v. Evans*, 251 Ga. 486, 306 S.E.2d 921 (1983).

The state of Georgia apparently is willing to allow its prison authorities to face lawsuits "in which the search for truth may be seriously impaired by the loss of evidence." *Kubrick*, 444 U.S. at 117, 100 S.Ct. at 356.[9] Hence, it is appropriate for the tolling statute to apply to federal actions brought by Georgia prisoners against Georgia prison officials. *Turner v. Evans*, 721 F.2d 341 (11th Cir.1983). However, application of that tolling statute to *Bivens* actions brought by federal prisoners against federal prison officials is inconsistent with the policy underlying *Bivens* actions and the federal policy of repose. In such instances, therefore, the tolling statute does not apply.

For the foregoing reasons, the order of the district court dismissing this action is

AFFIRMED.

---

9. The Georgia legislature has amended Georgia Code § 9-3-90 (formerly Ga.Code § 3-801) to delete "persons imprisoned" from the protection of the tolling state effective July 1, 1984.