**S.W. DANIEL, INC., and Sylvia Daniel**

v.

**Peter URREA.**

**No. 88–cv–909–WCO.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 27, 1989.

James F. Wyatt, Charlotte, N.C., for plaintiffs.

Asst. U.S. Atty. Albert L. Kemp, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, Chief Judge.

This case is presently before the court on Defendant Urrea's motion for summary judgment. The court conducted a hearing on this motion on February 21, 1989, after which it took the matter under advisement. After carefully considering the motion, briefs, evidence and arguments of counsel, the court grants summary judgment in favor of Defendant Urrea for the reasons set forth below.

### Summary Judgment

At the outset, the court notes that summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Because the procedure deprives parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination as to any material fact are disposed of by summary judgment. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The summary judgment procedure, however, is not regarded as a "disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.Rule Civ.Proc. 1." *Id.*

Summary judgment will not lie when sufficient evidence exists to cause a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The standard for evaluating summary judgment motions mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Id.*

at 2511, 106 S.Ct. at 25. Hence, the trial court may grant summary judgment only when there can be but one reasonable conclusion as to judgment under the applicable law. *Id.* With these fundamental notions in tow, the court turns to the instant motion.

### Factual Background

The parties have stipulated to the following facts for purposes of this motion. Plaintiff Sylvia Daniel ("Daniel") is the president of Plaintiff S.W. Daniel, Inc. ("SWD"), a federally licensed Georgia corporation which manufactures and sells firearms, machine guns, noise suppressors, and related component parts. Defendant Peter Urrea ("Agent Urrea") is a special agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF"). The instant case arises out of Agent Urrea's investigation and prosecution of Daniel and SWD for federal firearms offenses.

On July 18, 1984, Agent Urrea applied to a United States Magistrate for the Northern District of Georgia for a warrant to search the business premises of SWD in Atlanta, Georgia. Urrea supported this application with an eleven-page affidavit, which the plaintiffs contend contains false statements, omissions of material facts, and was otherwise made with reckless disregard for the truth and submitted in bad faith. The magistrate relied solely upon this affidavit in finding probable cause, and issued the warrant on July 18, 1984.

On July 19, 1984, Agent Urrea and several other government agents searched the premises of SWD, seized thousands of items and documents, and threatened several SWD employees that he was going to put SWD out of business. The documents formed the basis of a subsequent criminal prosecution of Daniel and SWD.[1] The criminal case terminated in November of 1986 after Daniel pled guilty to a misdemeanor offense and the numerous felony charges against both Daniel and SWD were dismissed.

---

1. *United States v. Daniel*, No. CR86–22A (N.D. Ga.1986).

The plaintiffs maintain that Agent Urrea engaged in a series of actions designed to interfere with their business and contractual relations during the pendency of the criminal prosecution. These actions include the following: (1) the search and seizure itself; (2) Agent Urrea's October 1985 agreement with Jud Hall, an SWD supplier, that if Hall would refrain from supplying firearm parts to SWD for two years, Hall would not be prosecuted in the criminal proceedings against the plaintiffs;[2] (3) Urrea's October 1984 instructions to Jim Weaver, editor of the periodical *Shotgun News*, to submit SWD's proposed advertisements to Agent Urrea for prior approval, and to print only those advertisements which Urrea approved; and (4) Agent Urrea's alleged false testimony during an October 1986 pretrial hearing in the criminal action, such testimony perpetuating the prosecution of that criminal action.

The plaintiffs filed a three-count *Bivens* action on April 26, 1988, alleging that Agent Urrea's conduct violated their constitutional rights under the Fourth and Fifth Amendments and injured their business and its reputation. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Count I seeks recovery for Agent Urrea's bad faith and malicious securing of a search warrant, his search and seizure of SWD on July 19, 1984, and his subsequent support of the criminal prosecution of SWD and Daniel. Count II seeks recovery specifically for illegal search and seizure, claiming that Agent Urrea's affidavit states inadequate facts to create probable cause to believe that SWD was engaged in illegal activity.

Finally, Count III is an action for malicious interference with business and contractual relations.

## Discussion

Agent Urrea maintains that all three counts are barred by the two-year statute of limitations period set forth in O.C.G.A. § 9-3-33.[3] The plaintiffs have argued that the Counts I and II are timely under the four-year limitations period of O.C.G.A. § 9-3-30,[4] and that Count III is timely pursuant to the four-year period set forth in O.C.G.A. § 9-3-32.[5] Accordingly, the court must determine the appropriate limitations period for these *Bivens* actions.

■ Congress has not provided a statute of limitations for *Bivens* actions. When Congress has declined to provide a limitations period for a federal cause of action, the court must borrow the applicable period from the forum state. *See Board of Regents v. Tomanio*, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-95, 64 L.Ed.2d 440 (1980). Under *Tomanio*, courts were left with the arduous and largely unguided task of determining which of a state's limitation periods applied to claims most analogous to the federal claim. Recently, in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court determined that the state limitation period applicable to personal injury actions should be applied to all actions brought pursuant to 42 U.S.C. § 1983, thereby greatly simplifying the court's task in determining the appropriate limitations period in § 1983 cases. Applying *Wilson*, this circuit has identified O.C.G.A. § 9-3-33, Georgia's two-year personal injury statute of limitations period, as the appropriate period for § 1983 purposes. *Mullinax v. McElhen-*

**2.** Hall interrupted his supplies from October of 1985 until November of 1986, when the criminal case terminated.

**3.** O.C.G.A. § 9-3-33 provides that

[a]ctions for injuries to the person shall be brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues, and except for actions for injuries to the person involving loss of consortium, which shall be brought

within four years after the right of action accrues.

**4.** O.C.G.A. § 9-3-30 provides that "[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues."

**5.** O.C.G.A. § 9-3-32 provides that "[a]ctions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues."

*ney,* 817 F.2d 711 (11th Cir.1987). *Bivens* actions are similar to § 1983 actions, the distinguishing characteristic between the two being that *Bivens* applies to constitutional deprivations by federal as opposed to state actors. Hence, it would appear logical to apply the teachings of *Wilson* to *Bivens* actions. However, neither the Supreme Court nor any panel of this circuit has addressed the issue of the applicability of *Wilson* to *Bivens*. At issue, therefore, is whether the *Wilson* mandate for § 1983 cases should apply to *Bivens* actions as well.

The decision in *Wilson* was chiefly a response to a concern that uncertainty regarding the appropriate statute of limitations period in § 1983 actions results in "useless litigation on collateral matters." *Wilson,* 471 U.S. at 275, 105 S.Ct. at 1946. The Court further noted that this uncertainty and the attendant litigation "[obstructs] the legislative purpose to create an effective remedy for the enforcement of federal civil rights." *Id.* The judicial purpose from which *Bivens* sprang is likewise obstructed by uncertainty regarding the applicability of a limitations period. In fact, disregarding the governmental entity involved, a properly alleged *Bivens* action is virtually identical to its legislative counterpart under § 1983; each is designed to afford federal remedies for violations of federal constitutional rights. It therefore appears clear to the court that both § 1983

and *Bivens* actions should be governed by the same limitations period.[6] The court therefore concludes, as has virtually every appellate court addressing the issue,[7] that the teachings of *Wilson* should be applied to *Bivens* actions as well.[8]

■ The plaintiffs alternatively argue that if the court finds that *Wilson* should be applied to *Bivens* actions, such application should be prospective and not retroactive. Determining the merit, if any, of the plaintiffs' argument requires application of the principles set forth in *Chevron Oil v. Huson,* 404 U.S. 97, 104–06, 92 S.Ct. 349, 354–55, 30 L.Ed.2d 296 (1971). *See also Williams v. City of Atlanta,* 794 F.2d 624, 626 (11th Cir.1986).

*Huson* establishes a three-part test for resolving issues of retroactive application of new rules of law:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a de-

---

**6.** As a panel of the Seventh Circuit opined, "a contrary result could lead to the incongruous application of inconsistent limitations periods to different members of a single conspiracy, based solely on whether an officer alleged to have committed the constitutional violation was employed by the state or federal government." *Beard v. Robinson,* 563 F.2d 331, 338 (7th Cir. 1977).

**7.** *See Bieneman v. City of Chicago,* 864 F.2d 463 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989) (applying *Wilson* to *Bivens* ); *Chin v. Bowen,* 833 F.2d 21 (2d Cir.1987) (same result); *McSurely v. Hutchinson,* 823 F.2d 1002 (6th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1107, 99 L.Ed.2d 269 (1988) (same result). *But see Gibson v. United States,* 781 F.2d 1334, 1342 n. 5 (9th Cir.1986) (declining the invitation to apply *Wilson* ).

**8.** The plaintiffs remind the court that § 1983 acts as a supplement to state remedies, whereas *Bivens* in some cases creates a remedy which would be otherwise unavailable in state court because of principles of federal immunity. *See Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). Hence, application of *Wilson* to *Bivens* actions might limit the ability of litigants to prosecute *Bivens* actions in states with short personal injury limitations periods. Reduced to its rudiments, the plaintiffs' argument is that the limitations period for *Bivens* actions should be longer than that for § 1983, inasmuch as alternative state remedies may be unavailable for the former, but available for the latter. The court is unpersuaded by this argument; a *Bivens* claim is no less stale than a similar § 1983 action at the end of a limitations period, notwithstanding the fortuitous fact that a state remedy for the same conduct is unavailable.

cision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding 'injustice or hardship' by holding nonretroactivity."

*Huson,* 404 U.S. at 106–07, 92 S.Ct. at 355–56 (citations omitted).

Turning to the instant case, the plaintiffs have failed to direct the court's attention to any Georgia federal opinions which applied a four-year limitations period to *Bivens* actions in general, or to Fourth or Fifth Amendment *Bivens* actions specifically, nor is the court aware of any such decisions. In fact, the sole 11th Circuit opinion passing on the applicable limitations period in a *Bivens* action did not disturb the district court's finding that the two-year period for personal injury actions was applicable. *Hawthorne v. Wells,* 761 F.2d 1514 (11th Cir.1985).[9] Hence, there is no showing that application of the two-year limitations period would alter clear precedent that the plaintiffs may have relied upon.[10] Furthermore, even if the most analogous limitations period under pre-*Wilson* law was longer than two years, it was unreasonable for the plaintiffs to wait longer than two years to file their complaint in light of the dearth of decisional law supporting their argument in favor of a longer period, particularly when *Wilson* and *Hawthorne* indicated a contrary result.[11] *Williams,* 794 F.2d at 627.

Moving to the second prong, failure to give retroactive application of *Wilson* will subvert the beneficial effect of uniformity in application of limitations periods to *Bivens* actions. *Cf. Williams,* 794 F.2d at 627 (same analysis as to § 1983). Finally, under the third prong, the court concludes that application of *Wilson* to this case would not visit an inequitable result upon the plaintiffs. There is simply no decisional law from this circuit supporting their argument for application of a longer limitations period, and the two sentinel cases, *Wilson* and *Hawthorne,* were decided long before the two-year period would have expired. Hence, as mentioned above, the plaintiffs were simply unjustified in waiting longer than two years to file this action. Accordingly, the court concludes that *Wilson* should be retroactively applied to *Bivens* actions, and therefore dismisses Counts I and II, which the plaintiffs concede accrued more than two years from the date of filing of the complaint.[12]

The plaintiffs, however, alternatively maintain that Count III, which is an action for malicious interference with business and contractual relations,[13] is not

---

**9.** *Hawthorne* was decided on June 4, 1985, six weeks after the Supreme Court's opinion in *Wilson,* and does not mention *Wilson* in its analysis. However, it was not necessary for the *Hawthorne* panel to discuss *Wilson* for at least two reasons. First, the *Hawthorne* plaintiff apparently did not challenge the applicability of the two-year limitations period, so it was not necessary for the court to pass on its appropriateness. Furthermore, even if applicable, *Wilson* would have commanded application of the same two-year period.

**10.** Furthermore, as was noted by the court in *Williams v. City of Atlanta,* 794 F.2d 624, 627 (11th Cir.1986), no case from Georgia had ever applied a limitations period longer than two years in a § 1983 suit for damages.

**11.** *Hawthorne,* like *Wilson,* was decided after the occurrence of most of the facts giving rise to this case. However, publication of these two opinions alone should have alerted the plaintiffs to the probability that the two-year period would be applied to their *Bivens* action, and that they should file their complaint without delay.

**12.** *See* Plaintiff's Response to the Defendant's Motion for Summary Judgment and Brief in Support Thereof at 8.

**13.** Count III does not allege a cause of action for malicious prosecution. This is significant because an action for malicious prosecution accrues on the date of favorable disposition of the underlying criminal action. *Dunn v. Tennessee,* 697 F.2d 121, 127 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). The plaintiffs could have argued that Count III was timely because the criminal action was disposed of "favorably" (dismissal of the felony counts), and that such disposition occurred within the two years of filing. However, the court doubts whether the plaintiffs *could maintain a cause of action for malicious* prosecution to the extent Daniel pled guilty to a misdemeanor in the criminal proceedings. *Dunn,* 697 F.2d at 126 ("At common law it is unanimously recognized that the termination of the underlying criminal proceeding in favor of the accused is an essential element of a malicious prosecution action.")

barred even under a two-year limitations period. Count III alleges that Agent Urrea engaged in a series of illegal activities which began in July of 1984 and continued through November of 1986 when the underlying criminal prosecution was terminated. One of these acts of misconduct—Agent Urrea's alleged false testimony during an October 1986 pretrial hearing in the criminal action—occurred less than two years from the filing of the complaint. Hence, the plaintiffs assert that Count III alleges a continuing tort which ended less than two years before filing of the complaint.

▪ As an initial matter, the court notes that the alleged false testimony of Agent Urrea during the pretrial hearing is irrelevant in determining when a cause of action accrued, inasmuch as Agent Urrea is absolutely immune from liability for his testimony as a witness. *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). What remains for determination, however, is whether Agent Urrea's earlier actions in seizing documents, foreclosing a supplier and censuring magazine advertisements constituted a continuing tort. This is a question of federal as opposed to state law. *Wilson*, 471 U.S. at 269, 105 S.Ct. at 1943; *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir.1987).

▪ As is the case with malicious prosecution, a cause of action for a continuing tort accrues when the wrongful conduct terminates. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125–26, 71 L.Ed.2d 214 (1982). The continuing tort principle addresses itself to persistent wrongful conduct, not mere persistent injury accruing from an earlier wrong. *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (no continuing tort in Title VII case; the time of decision to deny tenure, and not later date of ouster, is relevant); *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981) (similar result). Typical examples of the types of on-going wrongs that properly may be characterized as continuing torts include persistent denials of medical care and conduct constituting a pattern of mistreatment. *See, e.g., Neel v. Rehberg*, 577 F.2d 262 (5th Cir.1978) (refus-

al to provide medical treatment, shower, telephone and visiting privileges to prisoner constitutes a continuing tort); *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir.1974), *vacated and remanded on other grounds*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (refusal to provide psychiatric care to individual civilly committed to state mental hospital is a continuing tort). Other wrongs which cause harm into the future, but nevertheless result from a single act of misconduct, are not continuing torts in the absence of continuing illegal acts. *See, e.g., McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir.1988) (false arrest).

Applying these principles to the instant case, the court concludes that the alleged wrongful search and seizure, together with Agent Urrea's alleged coercion of the plaintiffs' supplier and advertiser, do not constitute a continuing tort. Agent Urrea searched the premises of SWD in July of 1984, and allegedly threatened the *Shotgun News* editor in October of 1984 and SWD's supplier in October of 1985. However, there is no evidence that he further threatened the supplier or magazine editor, and it is therefore clear that he engaged in no further actionable misconduct to perpetuate the harm caused by the initial wrongful acts. Although it may be true that Agent Urrea could have attempted to call off the prosecution and to eliminate the threats to the supplier and the magazine editor, these steps would only have served to mitigate the harm initially occasioned by earlier misconduct. Accordingly, the court concludes that Count III does not allege a continuing tort, and is therefore dismissed as barred by the two-year statute of limitations.

### Conclusion

Accordingly, after careful consideration, the court grants summary judgment in favor of Defendant Urrea and against the plaintiffs, and dismisses the case.

IT IS SO ORDERED.