**ALTAIR CORPORATION, et al., Plaintiffs,**

v.

**Carmen PESQUERA DE BUSQUETS, et al., Defendants.**

**Civ. No. 83–2028 (JP).**

United States District Court, D. Puerto Rico.

Oct. 10, 1984.

Jorge L. Suarez, Melendez Carrucini and Suarez Montes, San Juan, P.R., for plaintiffs.

Gloria E. Flores Andino, Federal Litigation Div., U.S. Dept. of Justice, San Juan, P.R., for defendants.

OPINION AND ORDER

PIERAS, District Judge.

This is an action brought by Altair Corporation, formerly Caribbean Finance Co., Inc. (plaintiff), pursuant to 42 U.S.C. Section 1983, seeking damages in the amount of $1,605,342.47 for an alleged deprivation of property without due process of law. Plaintiff claims said deprivation resulted from an order of the Department of Consumer Affairs of the Commonwealth of Puerto Rico, reducing certain financing charges for retail installment sales of motor vehicles. This Court's jurisdiction has been invoked under 28 U.S.C. Section 1343.

On August 14, 1984, Carmen Pesquera de Busquets and Angel S. Biaggi (defendants herein) filed a Motion for Summary Judgment and Memorandum of Law. On August 16, 1984, plaintiff filed its own Motion for Summary Judgment, submitting in support a Memorandum of Law filed August 14, 1984. On the basis of the Motions for Summary Judgment filed by the parties, together with the accompanying documents submitted, this Court reaches the following determinations of fact and law:

A. FACTS

The essential facts in this case are not in dispute.

1. Plaintiff, Altair Corporation, formerly Caribbean Finance Co., Inc., is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico.

2. On July 14, 1980, defendant Angel S. Biaggi, as Acting Secretary of the Department of Consumers Affairs, hereinafter "the Department", issued "Order No. 1 for the Revision of the Interest Rate and/or Finance Charges for Retail Installment Sales and Financing Contracts of Motor Vehicles" (hereinafter Order No. 1) reducing the maximum rates allowable for financing charges in sales of new and used motor vehicles. Order No. 1 was issued without prior notice or hearing.

3. On July 16, 1980, plaintiff petitioned the agency for reconsideration of said order.

4. Defendant Carmen T. Pesquera de Busquets, as Secretary of the Department of Consumer Affairs, reaffirmed said Order No. 1 in a Resolution dated August 18, 1980 and denied reconsideration.

5. On August 27, 1980, plaintiff appealed for judicial review of the administrative decision to the Superior Court of Puerto Rico, San Juan Part, naming as defendant Carmen T. Pesquera de Busquets in her official capacity. Defendant Angel S. Biaggi was not sued in the State Court suit.

6. The Superior Court of Puerto Rico, San Juan Part, entered a Judgment revoking Order No. 1 on May 7, 1981. A Motion for Reconsideration of the Judgment filed by the Department on May 22, 1981 was denied by the Superior Court in its Decision and Order issued September 13, 1982. The Judgment of May 7, 1981 became final and unappealable on October 13, 1982, 30 days from the date of denial of reconsideration. The parties have agreed that the Superior Court's decision is to be considered as res judicata in the instant case.

7. The Superior Court decision was based on its finding that plaintiff was denied due process of law because a hearing in accordance with law was not held prior to the issuance of Order No. 1.

8. On May 1980, prior to Order No. 1, the maximum interest rates allowed by the Department were 11% for loans on used cars and 10% for loans on new cars. Order No. 1 reduced the interest rates on used and new car loans to 9% and 8%, respectively. This Order was in effect from July 14, 1980 through November 16, 1980. After holding public hearings on November 17, 1980, the Department issued Order No. 2 raising the interest rates to 10½% on used cars and 9½% on new cars. The parties agree that plaintiff's damages are limited to the period between July 14, 1980, the

date of issuance of Order No. 1, and November 17, 1980, the date of issuance of Order No. 2.

### B. ISSUES OF LAW

42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities searched by the Constitution and Laws, shall be liable to the party injured in an action at law..."

Plaintiff alleges that it was deprived of its property without due process of law as secured by the U.S. Constitution when defendants Pesquera and Biaggi, acting under color of state law and without prior notice and hearing, issued Order No. 1, reducing the interest rates and/or financing charges allowable in retail sales of motor vehicles. Although plaintiff's allegations assert the elements necessary to state a cause of action under 42 U.S.C. § 1983, plaintiff's claim cannot prevail on the merits without overcoming the affirmative defenses of qualified immunity and statute of limitations raised by defendant.

### 1. *Doctrine of Qualified Immunity*

■ In actions brought under 42 U.S.C. § 1983, a qualified immunity defense from liability for damages is available to state executive officers performing discretionary functions. *E.g., Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Supreme Court has emphasized the essential role of the qualified immunity defense in allowing the vindication of legitimate claims for violations of constitutional rights while preserving the freedom of public officials to act without fear of subsequent harassing litigation which could not reasonably have been anticipated at the time of action. *See, e.g., Butz v. Economou,* 438 U.S. 478, 506–7, 98 S.Ct. 2894, 2910–11, 57 L.Ed.2d 895 (1978); *Harlow v. Fitzgerald,* 457 U.S. 800 at 814,

818–19, 102 S.Ct. 2727 at 2736, 2738–39, 73 L.Ed.2d 396 (1982).

■ In order to receive the protection of qualified immunity, it must be shown that an official's conduct did not violate "clearly-established statutory or constitutional rights of which a reasonable person would have known" at the time of the conduct. *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738. Even if a defendant's conduct violates some statutory or administrative provision, qualified immunity still provides protection unless it is demonstrated that the conduct violated the relevant legal standard defined at that time. *Davis v. Scherer,* —— U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

■ On a motion for summary judgment, it is appropriate for a trial court to determine whether the law was clearly established at the time of the conduct at issue. If the law was clearly established, the immunity defense will fail; if the law was not clearly established, or if the official pleading the defense proves extraordinary circumstances which show that he neither knew nor should have known of the applicable legal standard, the defense should be sustained. *Harlow v. Fitzgerald,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39; *See* 438 U.S. at 507–08, 98 S.Ct. at 2911–12.

In the instant case, the Department officials have raised the defense of qualified immunity and, in the effort to meet their burden of proof, have submitted for this Court's consideration the statutory and regulatory provisions on which they relied. Defendants argue that they issued Order No. 1 in the good faith fulfillment of their responsibilities under Article 8 of the enabling act of the Department. Title 3 L.P. R.A. Section 341g. Article 8 expressly excludes the requirement of a public hearing when the Secretary issues price orders on the basis of regulations containing criteria for determination of said orders. 3 L.P. R.A. 341g, Subsection (a), paragraph 3. The term "price order" in this provision has been interpreted to include financing charges. *Caribbean Finance Co., Inc. v.*

*Hon. Carmen T. Pesquera,* Decision and Order, Civil No. 80–4597, Superior Court of Puerto Rico, San Juan Part, (Sept. 13, 1982). As noted by the Puerto Rico Superior Court, the rate reductions in Order No. 1 were determined in accordance with the criteria established in Regulation No. 2640 promulgated by the Department and approved by defendant Pesquera as Secretary on May 1, 1980. Section 2(a) of this regulation provides:

"A. At his own initiative or as requested by the interested party, the Secretary may issue order revising the rate of interests and/or the maximum financing charges in the retail installment sales contracts for motor vehicles taking into consideration the following criteria:

1. money and operation costs involved in the financing

2. market conditions

3. reasonable benefits.

4. interest of all parties affected;

5. and any other economic factor that is necessary for said order." Regulation to Regulate Activities Conducted in the Retail Installment Sales of Motor Vehicles, # 2640, Part II, Section 2(a).

On judicial review, the Superior Court found that the criteria relied on by the Department officials were not adequate to warrant the application of Article 8's exception to the prior hearing requirement. The Superior Court also cited a conflicting statutory provision governing the Department which requires a public hearing in order to fix or review the maximum financing charges for retail installment sales. Article 407 of Act Number 68, 10 L.P.R.A. 777.[1]

According to the Superior Court, the statutory exception to the rule requiring hearings would be triggered only when the criteria established by regulation contained *all* the "pertinent data, information, observations or arguments" needed to determine new price orders, or when the criteria were sufficiently concrete to allow the revision of charges in an objective manner such as a

mathematical formula dependent solely on the bank prime rate. *Caribbean Finance v. Pesquera,* Civil No. 80–4597, slip op. at 7. The Court concluded that the criteria relied on by the Department officials in the issuance of Order No. 1 required data which, according to the clear-cut public policy underlying both statutes, could only be obtained through a public hearing.

■ Although this Court now enjoys the benefit of the state Court's resolution of the apparently conflicting statutory mandates, the Department officials could not reasonably have anticipated this judicial interpretation of the exception authorized in the Department's enabling act. Although, at the time the defendant's conduct occurred, notice and a hearing were clearly established elements of the constitutional right to due process, the requirements of prior notice and hearing applied to the administrative revision of financing charges were not clearly established as a matter of Constitutional law.

The procedural safeguards guaranteed by the due process clause protect citizens against the arbitrary deprivation of significant established property interests. Since the statutory provisions governing the Department's revision of interest rates conflicted with regard to the requirement of a hearing in the setting of interest rates, it cannot be said plaintiff had a clearly-established entitlement to said rates rather than a mere expectation of loans at such rates. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Furthermore, even if plaintiff could establish that the level of interest rates constituted a property interest triggering constitutional safeguards, plaintiff's right to a prior hearing before revision of those rates would only be required if the government interest in administrative and fiscal efficiency were outweighed by the individual interest and the value of the procedural safeguards. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893,

1. This provision originally applied to the Retail Installment Credit and Financing Companies Regulatory Board. Subsequently, the functions, powers and duties of the Board were transferred to the Department and its Secretary. Article 5 of the Organic Law, 3 L.P.R.A. 341d.

903, 47 L.Ed.2d 18 (1976). In this case, the government might very well predominate in the balance in light of the strong state interest in the efficient regulation of business for the social welfare.

Although the state court's final decision on the matter in 1982 established that the officials' conduct violated the applicable statutory provisions, the Supreme Court has rejected the suggestion that the violation of some statutory or administrative provision, even if clear at the time of violation, was sufficient in itself to forfeit an official's qualified immunity. *Davis v. Scherer*, —— U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139. This rejection is based on the recognition that higher-level executive officials routinely make close decisions which are "subject to a plethora of rules 'often so voluminous, ambiguous and contradictory, and in such flux that officials can comply with them only selectively.' *See* P. Shuck, Suing Government 66 (1983)." *Id.* at ——, 104 S.Ct. at 3021. To require officials to not only know the applicable regulations but also to understand the interest underlying each regulation, an interest which in some cases eludes even trained lawyers with full access to relevant legislative and administrative materials, would be unfair and impracticable in light of the public need for officers to act swiftly and firmly. *Id.* at ——, n. 13, 104 S.Ct. at 3021, n. 13.

The Department officials in the case at bar are no exception. Faced with the ambiguous and contradictory mandates of their own enabling act and the provisions governing the authority of the retail installment Sales Board transferred to them, the Department officials selectively complied with the enabling act. It would be unfair and impracticable to now charge these officials with lack of the hindsight understanding gained from the state court decision reached after a lengthy process of research and consideration.

### 2. *Application of Statute of Limitation*

The parties have raised the running of the statute of limitations as a contested issue of law in this case (Pre-trial Order, p. 4; Initial Scheduling Order, p. 3). The question presented before this Court is whether the one year limitations period began to run on July 14, 1980, the date of the issuance of Order No. 1, or on October 13, 1982, the date when the decision of the Superior Court became final and unappealable.

■ Since no federal statute prescribes the limitations period applicable to 1983 claims, the period for filing such actions is controlled by the applicable state statute of limitation. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). The First Circuit has held that the most analogous state statute of limitations is the one year period applied to tort actions brought under Title 31 L.P. R.A. Section 5298(2). *Graffals González v. García Santiago*, 415 F.Supp. 19 (1976), *aff'd* 550 F.2d 687 (1st Cir.1977); *Rivera Fernández v. Chardón*, 648 F.2d 765 (1st Cir.1981). Furthermore, the First Circuit has firmly held that an action in state court between the same parties and arising from the same facts does not toll the statute of limitations unless the action is for the same remedy as the case at bar. *Ramirez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 319–20 (1st Cir.1978) (plaintiff's action for mandamus in courts of the Commonwealth of Puerto Rico does not toll statute of limitations in plaintiff's 1983 suit).

■ Applying the *Ramirez* rule to this case, it is clear that, even if defendants are not entitled to qualified immunity, plaintiff's claim under 42 U.S.C. § 1983 in this case is time-barred under the applicable one year statute of limitations. Under 31 L.P.R.A. Section 5298(2), the one year period runs from the time the injured person knew or should have known of the injurious action. In this case, the 1983 action began to run on July 14, 1980, the date of issuance of Order No. 1. The limitation period was not tolled by the institution of judicial proceedings in the Superior Court of Puerto Rico because the state suit was one for judicial review seeking injunctive

relief against defendant Pesquera in her official capacity. In the 1983 case now before this Court, plaintiff is seeking damages against defendant Pesquera in her personal capacity, an action which plaintiff was free to file within 1 year after learning of the issuance of Order No. 1. Such a situation is exactly the sort barred by the First Circuit in *Ramirez* since the action was not tolled by institution of a prior judicial proceeding. Furthermore, plaintiff's action against defendant Biaggi in this case is time-barred apart from the *Ramirez* rule. Biaggi was not named a party to the prior state court suit and thus plaintiff's claim against him was barred as of one year from July 14, 1980.

### C. CONCLUSION

This Court concludes that the action taken by the Secretary and Acting Secretary of the Department of Consumer Affairs in the issuance of Order No. 1 without a prior hearing did not. violate clearly-established standards of due process at the time of issuance and are thus protected by a qualified immunity. Furthermore, plaintiff's claim under 42 U.S.C. § 1983 is time-barred, having been brought more than one year after July 14, 1980.

Accordingly, for all of the above stated reasons, Summary Judgment is hereby GRANTED in favor of defendants.

IT IS SO ORDERED.

The Clerk is to enter Judgment accordingly.