Jon Brett HAMBRICK, Plaintiff,

v.

Brian DAVIES, Defendant.

Civ. A. No. 87–116.

United States District Court,
E.D. Kentucky,
Covington Division.

April 26, 1989.

David Fessler, O'Hara, Ruberg & Taylor, Covington, Ky., for plaintiff.

Lee W. Rowland, Clark, Ward & Hopgood, Lexington, Ky., for defendant.

## OPINION AND ORDER

BERTELSMAN, District Judge.

This matter is before the court on plaintiff's objections to the Report and Recommendation of the Magistrate, and defendant's response thereto.

The action involves a prisoner's 42 U.S.C. § 1983 complaint of intentional misconduct by an arresting police officer.

### FACTS

On June 2, 1983, the defendant, a Boone County police officer with whom plaintiff had public confrontational encounters in the past, and who had made public threats to harm the plaintiff, entered a house at 12 Mary's Court in Florence, Kentucky with other officers to serve a search warrant for narcotics. Finding no one in the front of the house, defendant Davies made his way along a hallway to the rear of the house with drawn gun and waited by a doorway. When the plaintiff emerged from a room into the hallway carrying a pistol and saw his antagonist Davies with drawn revolver, plaintiff thought Davies was going to kill him. Shots were exchanged. Plaintiff was shot in the chest and Officer Davies was hit in the leg. Plaintiff denies Davies' version that he had warned the plaintiff several times to drop his gun before firing and he also denies that he began to raise his gun from his side to shoot at Davies before Davies shot him. Finally, plaintiff denies Davies' testimony that plaintiff entered the hallway from the bathroom where Davies

contends plaintiff was flushing drugs down the toilet.

A quantity of cocaine, marijuana and hashish was found in the house. The plaintiff was taken to Booth Hospital in serious condition, but he survived. When released, he was incarcerated in the Boone County Jail.

On July 15, 1983, the plaintiff was indicted for criminal attempt to commit murder (shooting Davies) and trafficking in a controlled substance. Plaintiff claims that the false testimony of Davies, given in an attempt to cover his own misconduct, was responsible for the improper entry and search in the first instance, plaintiff's indictment, and his later conviction.

Plaintiff stayed in the Boone County Jail while several pretrial events took place. On September 9, 1983, his case was set for trial on December 2, 1983. It was later rescheduled.

On November 15, 1983, plaintiff's mother posted a $10,000 cash bond, whereupon he was released until January 6, 1984. At trial, he was convicted of trafficking in narcotics and sentenced to five years in prison. He was also convicted of attempted murder and sentenced to 15 years. After imprisonment for 37 days at the Kentucky State Reformatory, he was transferred to the Bell County Forestry Camp operated by the Kentucky Department of Corrections until his parole on June 10, 1987. A month later, on July 16, 1987, plaintiff filed his complaint in the instant action. Accordingly, four years and two weeks elapsed between the date of the alleged violation on June 2, 1983 and the filing of the complaint, and plaintiff was out of jail only for the brief period before trial.

## ANALYSIS

Plaintiff essentially argues that his complaint is timely because, although KRS 413.140 establishes a one-year statute of limitations for personal injury cases, KRS 413.310 tolls the time spent during confinement in a penitentiary. Additionally, he argues that the recent Supreme Court decision in *Owens v. Okure,* —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), establishes that KRS 413.120(6), and not KRS 413.140, should apply. KRS 413.120(6) establishes a five-year limitations period. If KRS 413.120(6) applies, plaintiff's filing would have been timely.

Defendant had no opportunity to rebut plaintiff's *Owens v. Okure* argument since plaintiff first raised it in his objections to the Magistrate's Report and Recommendation on March 15, 1989, and the Magistrate also did not discuss *Owens,* because it was not raised before him.

Defendant argues that the Kentucky tolling statute, KRS 413.310, does not apply to prisoner § 1983 cases brought in federal court because its application in such cases would be inconsistent with the federal policy favoring a prompt resolution of alleged constitutional violations. *Higley v. Michigan Dep't. of Corrections,* 835 F.2d 623, 626–27 (6th Cir.1987).

Thus, the issues now before the court are:

(1) Does *Owens v. Okure, supra,* require the application of KRS 413.120(6) in § 1983 actions filed in Kentucky?

(2) Does KRS 413.130 *per se* require the tolling of the applicable statute of limitations during the incarceration of a prisoner in § 1983 cases?

(3) Do the plaintiff's claims that he was denied effective access to the federal court during his incarceration because of certain stated deficiencies in the prison's law library require that the applicable statute of limitations be tolled, where the prisoner declined transfer to another facility which admittedly had the sought-after legal references available?

I. *Owens v. Okure does not require the application of KRS 413.120 in § 1983 actions.*

In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court resolved a prevalent disagreement among the lower courts by holding that the applicable statute of limitations for § 1983 actions was the forum state's statute of limitations in personal injury actions. However, some confusion

still remained, because some states have different statutes of limitations for different kinds of personal injury actions.

This confusion was resolved by the Supreme Court in *Owens v. Okure,* —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). There the Court held that "where a state has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute of limitations for all other personal injury actions ... the residual or general personal injury statute of limitations applies." 109 S.Ct. at 582.

Reemphasizing its intention to eliminate the confusion in this area once and for all, the Supreme Court said:

"Some states have a general provision which applies to all personal injury actions with certain specific exceptions. Others have a residual provision which applies to all actions not specifically provided for. Whichever form they take, these provisions are easily identifiable by language or application."

109 S.Ct. at 580.

Applying these principles to Kentucky practice, it is clear that KRS 413.140(1)(a) is the "general provision which applies to all personal injury actions with certain specific exceptions" which the *Owens* opinion requires be applied in Kentucky personal injury cases. This statute reads:

"**Actions to be brought within one year.** —(1) The following actions shall be commenced within one (1) year after the cause of action accrued:

(a) An action for an injury to the person of the plaintiff, or of her husband, his wife, child, ward, apprentice or servant."

This statute is "easily identifiable" by both its language and universal Kentucky practice as the general personal injury statute in Kentucky. *Cf. Browning v. Pendleton,* 869 F.2d 989 (6th Cir.1989).

The plaintiff herein and the plaintiffs in other cases have been confused because the same one-year limitation applies to actions for malicious prosecution, libel, slander, malpractice and other miscellaneous personal injury litigation. KRS 413.-140(1)(c), (d), and (e). These plaintiffs assume that because there is a one year

period for these specific torts that there must be a longer general residual period to be found elsewhere. This is not the case. Subdivision (a) *is* the general or residual statute and the period is also one year. Apparently this situation is somewhat unusual in state statutory schemes. Thus, it may be seen that *Owens, supra,* really had no effect on Kentucky § 1983 practice.

KRS 413.120(6) which provides a limitations period of five years for "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated," is not even a statute for personal injury actions. It is the sort of "catch-all" statute specifically rejected by *Wilson, supra.*

Therefore, the court holds that the applicable limitations period for § 1983 actions filed in Kentucky continues to be one year, even after the decision in *Owens, supra.*

II. *KRS 413.130 does not apply, per se, to toll KRS 413.140(1)(a) during plaintiff's period of incarceration.*

The Sixth Circuit has ruled in *Higley v. Michigan Department of Corrections,* 835 F.2d 623 (6th Cir.1987), that to apply a state tolling statute to preserve a prisoner's § 1983 cause of action for the period during which he is incarcerated would be counter-productive to the federal policy favoring the disposition of § 1983 claims as promptly as possible. *Id.* at 626.

The circuit court found that its deference to federal policy in this respect was fully consistent with the Supreme Court's reservation in *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), to the effect that courts are obligated to apply state tolling statutes only when "the result is not inconsistent with federal law or policy." 835 F.2d at 624.

The *Higley* court noted that "today prisoners suffer less isolation and fewer restrictions than when ... tolling statute[s] originated." 835 F.2d at 625.

Therefore, it concluded that "so long as the state system *erects no barriers to the federal courts,* we regard application of the state disability tolling statute to be

'inconsistent' with federal law." *Id.* at 626 (emphasis added).

### III. The Plaintiff's claims that certain deficiencies in the prison's law library during his incarceration constitute a "barrier to the federal court" are without merit.

■ The affidavits submitted in this case establish that the plaintiff was trained, and worked as, a legal aide during his period of incarceration at the Bell County Forestry Camp. Eddie Ray Smith affidavit; Lewis D. Kuhl affidavit.

Additionally, the policy statements of the Kentucky Bureau of Corrections submitted for the record in this case clearly establish that the Bureau was in compliance with the consent decree of the United States District Court for the Western District of Kentucky with respect to the provision of a legal services program sufficient to assure legal resources, including adequate law library facilities, to inmates. *Kendrick v. Bland,* 541 F.Supp. 21, 22, App. I p. 27 (W.D.Ky. 1981); Bureau's Memorandum CPP 14.4 "Legal Services Program" dated June 29, 1984 at 4 (providing for a basic law library in minimum security institutions, such as the Bell County Forestry Camp where plaintiff served the major part of his incarceration).

The Bureau Policy directive recognizes that inmates in minimum security institutions might from time to time require or desire more extensive legal resource materials than are provided. Accordingly, provision is made for inmates to request transfer in such cases to another facility that is furnished under the program with a more extensive library. *Id.* The policy further provides that upon completion of their legal research, inmates transferred for this purpose may request a return transfer back to their former minimum security institution, circumstances permitting. *Id.* at 4, 5. A legal aide, on the other hand, is *guaranteed* by the policy directive a return transfer to the former minimum security institution. *Id.* at 5. This policy was affirmed in the Bureau's follow-up memorandum dated May 31, 1985.

Plaintiff admits that he refused transfer to the Roederer farm facility to avail himself of the more extensive law library facilities there. He argues that it was improper to require him to do so because he would, he contends, have lost certain privileges there. This argument ignores that as a legal aide he was *guaranteed* re-transfer to Bell upon completion of his research.

The Supreme Court, in *Bounds v. Smith,* 430 U.S. 817, 830, 97 S.Ct. 1491, 1499, 52 L.Ed.2d 72 (1977), did not require a complete law library in every facility, so long as meaningful access to the courts was provided by the prison system considered as a whole:

> "[W]hile adequate law libraries are one constitutionally acceptable method of assuring meaningful access to the courts, our decision ... does not foreclose alternative means to achieve that goal."

The District Court for the Middle District of Pennsylvania has expressly held that one acceptable alternative method for guaranteeing prison inmates effective access to the courts is to provide them with an opportunity to transfer to an institution that is furnished with an "adequate law library." *Padgett v. Stein,* 406 F.Supp. 287, 297 (M.D.Pa.1975). This case was decided two years before *Bounds.* The *Bounds* Court appears to have agreed, however. It said:

> "[A] legal access program need not include any particular element we have discussed, and we encourage local experimentation."

430 U.S. at 832, 97 S.Ct. at 1500. Additionally, the Court commented:

> *"This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial."*

*Id.* at 825, 97 S.Ct. at 1496 (emphasis added).

Following *Bounds,* the courts have taken the position that no specific method is imposed upon correctional institutions to guarantee prisoner access to the courts as long as the practices or regulations em-

ployed do not, in fact, constitute barriers to such access. *See, e.g., Williams v. Lane,* 851 F.2d 867, 879 (7th Cir.1988) ("This Court held as constitutionally adequate a plan that provided for inmate access to a 'satellite' library coupled with a system for requesting materials from the main branch"); *Peterkin v. Jeffes,* 855 F.2d 1021, 1041 (3d Cir.1988) (where inmates claim inadequacy of law library, analysis of whether a constitutional injury has occurred is simply the *Bounds* analysis).

Accordingly, the plaintiff has not shown that he was denied effective access to the courts. At most, he was temporarily inconvenienced by being required to transfer to a facility with a more extensive law library and from which institution he was guaranteed re-transfer as a legal aide upon completion of his research. This policy, particularly as applied to plaintiff, could not reasonably be construed as a barrier to his right of access.

Finally, plaintiff's argument that *Higley* should not retroactively be applied should be touched upon briefly. Plaintiff essentially argues that, even if he had done his legal research, he would have come across KRS 413.130 and would have concluded, reasonably, that this statute tolled the limitations period for bringing his § 1983 action for the duration of his incarceration. Accordingly, he urges, he waited to bring the action until one month after his parole on June 10, 1987.

The problem with this argument, as the Magistrate points out, is that such a conclusion on the plaintiff's part would not have been justified even before *Higley* was decided. *Campbell v. Guy,* 520 F.Supp. 53 (E.D.Mich.1981), *aff'd,* 711 F.2d 1055 (6th Cir.1983), held directly on point that "it begs reason to suggest that incarceration *per se* is a disability as to causes of action which have been brought pursuant to 42 U.S.C. § 1983." *See also Perotti v. Carty,* 647 F.Supp. 39, 40 (S.D.Ohio 1986); *Vargas v. Jago,* 636 F.Supp. 425, 427 (S.D.Ohio 1986) (referring to *Campbell* as "soundly rejecting the contention that state tolling statutes affected the limitations period for § 1983 actions in the Sixth Circuit). The

only basis plaintiff has for arguing that he failed to consider this precedent is that reference to it was not available to him, an argument that is not sustainable under the *Bounds* analysis.

Accordingly, the objections to the Magistrate's Report and Recommendation must be overruled, the Magistrate's Report and Recommendation adopted, and the defendant's motion for summary judgment granted. A separate Judgment shall enter concurrently herewith.

IT IS SO ORDERED.

### JUDGMENT

Pursuant to the Opinion and Order entered concurrently herewith, and the court having considered *de novo* those objections to the Report and Recommendation of the Magistrate filed by plaintiff, and being advised,

IT IS ORDERED AND ADJUDGED as follows:

1. That the objections of the plaintiff to the Report and Recommendation of the Magistrate be, and they are, hereby overruled;

2. That the Report and Recommendation of the Magistrate be, and it is, hereby adopted as the findings of fact and conclusions of law of the court;

3. That the motion of defendant for summary judgment be, and it is, hereby granted; and

4. That the complaint herein be, and it is, hereby dismissed, with prejudice, and stricken from the docket of this court.