**Esther ARONSON, Plaintiff,**

v.

**NEW YORK CITY EMPLOYEES RETIREMENT SYSTEM, Defendant.**

**No. 89 Civ. 5169(KTD).**

United States District Court, S.D. New York.

Jan. 17, 1991.

Kriesberg & Maitland, P.C. (Jeffrey L. Kreisberg, of counsel), New York City, for plaintiff.

Victor A. Kovner, Corp. Counsel (Magda Deconinck, of counsel), New York City.

MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Esther Aronson brings this action for declaratory and injunctive relief against defendant New York City Employees Retirement System ("NYCERS"), claiming violations of her rights pursuant to 42 U.S.C. §§ 1983 and 1988 (1982), the Fourteenth Amendment of the United States Constitution, and Art. 5, § 7 of the New York State Constitution. She also seeks to be reinstated in NYCERS for each

year that she has qualified for Workers' Compensation. NYCERS moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a cause of action on statute of limitations grounds. After NYCERS' motion was brought, I granted leave pursuant to Fed.R.Civ.P. 12(b) for the parties to conduct depositions in connection with this motion. Aronson does not dispute converting this motion to dismiss into one for summary judgment.[1] I therefore undertake *sua sponte* to convert this motion to dismiss pursuant to Fed.R.Civ.P. 56 because of the parties' reliance on matters outside the pleadings and because neither of the parties' rights would be impaired thereby.

## FACTS

Aronson was employed by New York City's Human Resource Administration ("HRA") as a social worker from 1965 to 1966 and later from August 1967 until June 1, 1983. Complaint ¶ 8. She became a member of NYCERS on the date of her initial employment by the City, October 5, 1965, and then again when she rejoined HRA's employ on August 17, 1967. Originally Aronson enrolled in a Career Pension Plan, known as the fractional plan, in which Aronson duly chose to be transferred to Plan A.[2]

On February 23, 1981, Aronson allegedly suffered an allergic reaction resulting from exposure to tobacco smoke, fainted on her jobsite, and was removed for medical attention. She never returned to work. Complaint ¶¶ 10–12. She filed a claim for Workers' Compensation benefits, which was initially denied by the City but then granted on appeal in August of 1983. Benefits were awarded retroactive to February 23, 1981, the date of her fainting episode. She has continued receiving Workers' Compensation benefits from that date to the present.

While her Workers' Compensation claim was pending, and notwithstanding the bringing of that claim, the City commenced disciplinary charges against her alleging that she had been absent without first obtaining approved medical leave. On October 14, 1982, a hearing was held by the HRA on the recommendation that Aronson be dismissed. During the time of the hearing, she was accompanied by a union representative. After the hearing, the hearing officer recommended that Aronson be dismissed from service, effective June 1, 1983. Complaint ¶¶ 15, 17; Defendant's Memo in Support of Dismissal, p. 4. Since August 1983, Aronson has been and continues to receive Workers' Compensation benefits retroactive to February 23, 1981, the day that she fainted. Complaint ¶ 18.

## DISCUSSION

On May 13, 1988, nearly five years after her dismissal from city-service, Aronson requested that NYCERS permit her to withdraw her election of Plan A and allow her to elect the 55–year Increased–Service Fraction or Plan B so that she could receive vested retirement benefits under § 13–173 of the New York City Administrative Code ("Administrative Code"). NYCERS refused to grant Aronson's request because § 13–173 requires that a member be in Plan B before discontinuing city-service.

Aronson contends that her inability to transfer to Plan B in May of 1988 constitutes a forfeiture of her pension rights without being afforded the benefit of a prior due process hearing. Complaint ¶¶ 1, 24, 25. Specifically, she avers that under the New York State Constitution, she has a property interest in her pension rights which is protected under the due process clause of the Fourteenth Amendment, and

---

1. *See* Plaintiff's Brief in Opposition to Motion to Dismiss, p. 2.

2. On October 22, 1979, Aronson elected Plan A. Pursuant to § 13–162 of the Administrative Code of the City of New York, a member in a career pension plan position who elects Plan A is eligible to retire after having completed 25 years of career pension plan qualifying service, with benefits to begin no earlier than age 55. Alternatively, a member in Plan A is eligible to retire upon the completion of 20 years of qualifying service, but benefits will not begin until the date the member could have completed 25 years of qualifying service, or attained the age of 55, whichever is later.

that NYCERS' automatic termination of her pension rights upon her termination from City services was a deprivation of property without procedural due process of law. She further maintains the time within which she was entitled to bring action for her injuries did not begin to accrue until May 13, 1988. NYCERS counters Aronson's substantive arguments with a statute of limitations defense, claiming that the clock began running on the date of her termination from city-service, June 1, 1983, and that the time within which she can commence suit has lapsed.

■ Because of Congress's failure to provide a specific statute of limitations to govern § 1983 actions, federal claims brought under 42 U.S.C. § 1983 are held to be governed by the state statute of limitations for personal injury actions in the state where the action is brought. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The applicable New York statute is the three-year statute of limitations governing general personal injury actions. *See* N.Y.Civ.Pract.L. & Rules § 214(5); *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Federal law, however, will determine the date upon which the statute will accrue. *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.), *cert. denied sub nom. Nassau County Republican Committee v. Cullen*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Under federal law, a claim accrues when the plaintiff "knew or had reason to know" of the injury which is the basis of her claim. *Pauk v. Board of Trustees*, 654 F.2d 856, 859 (2d Cir.1981) (quoting *Singleton v. New York*, 632 F.2d 185, 191 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981)).

While conceding that the appropriate statute of limitations for this action is three years, Aronson contends that the statute did not begin to run against her until May of 1988, which was when she first knew that she had been dropped from membership in NYCERS. Aronson contends that she could not possibly have known of her injury before May of 1988 because that was when she was first informed that her application to transfer from Plan A to Plan B was rejected.

■ NYCERS, on the other hand, insists that June 1, 1983, the date of Aronson's termination from city-service, is the date upon which the three year clock began to run, maintaining that Aronson knew or had reason to know of any potential impairment of her rights to elect certain retirement benefits upon her severance from city employ. I agree. Apparently, Aronson was aware that she was terminated from NYCERS coverage the first time that she left city employ on August 17, 1966 and that she was specifically reinstated upon rejoining HRA on August 17, 1967. Thus, she may be charged with knowing or she should have known that upon her discharge for unauthorized medical leave, it was likely that NYCERS coverage would not include an election to transfer plans after her termination from city-service.[3]

That Aronson bases her claims on the belief that the inability to transfer from

---

**3.** "City-service" is defined in § 13–101(3)(a) of the Code as follows:

> [S]ervice, whether appointive or elective, as an officer or employee of the city or state of New York, of any agency thereof and of any court, so far as such service is paid for the city, or service, by any person, in any county office, paid for in whole or in part by the city
> . . .

While being in city-service is a necessary prerequisite for initial membership in NYCERS, a NYCERS member, with less than 25 years of service, is entitled to leave city-service for a total of five years in a ten-year period without forfeiting either his membership in NYCERS or the interest on contributions. Administrative Code § 13–146(1).

When Aronson's "membership" in NYCERS was terminated is irrelevant, however, for her ability to make an effective switch from Plan A to Plan B in order to receive a vested retirement benefit pursuant to § 13–173 of the Administrative Code ceased upon her discontinuance of city-service on June 1, 1983. The problem here lies in that Aronson fails to effectively distinguish "membership" in NYCERS from "city-service." However, one must be employed in city-service to belong to or switch into Plan B. No switches from Plan A to Plan B may be effected post-discharge. Administrative Code § 13–173(a)(2).

Plan A to Plan B resulted in a denial of property rights without due process of law is of no moment. I find that her inability to transfer plans is a result of her discontinuance from city service. Administrative Code § 13–173(a)(2). Any rights she might have had to elect to change retirement plans discontinued upon her severance from city-service.[4] Moreover, Aronson discontinued city-service on June 1, 1983, thus fixing this as the date she could have first maintained her action. Failure to commence an action within three years of her termination provides a defense to her claims at bar.

■ NYCERS further avers that it was also on June 1, 1983 that Aronson had reason to know of her injury. I agree. She was originally enrolled in a pension plan and therefore had access to all of the membership materials explaining the plans. Apparently, upon request, all plan members are given a booklet describing the plan in which they are enrolled. Kreisberg Affid., Exh. A. This booklet contains the restrictions on changing retirement plans at issue in this case. Because there is no affirmative duty for NYCERS administrative staff to inform members about the specifics of pension provisions beyond providing the booklet, the availability of this information to members charges Aronson with the information contained within the booklets. *See United States v. Sams,* 521 F.2d 421, 429 (3d Cir.1975) (citing *Japanese War Notes Claimants,* 373 F.2d 356, 358–59, 178 Ct.Cl. 630 (toll exists where claimant did not know of an impairment of his rights and *could not learn that he had been injured* by the government's allegedly wrongful conduct) (emphasis supplied), *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967)).

Further, Aronson concedes to being a member of Plan A prior to her discharge from employment. Deconinck Affid., Exh. 2, p. 12. She is thus charged with constructive knowledge of that which was contained within the Plan description booklets. The booklets stated that to be covered under Plan B or elect Plan B it must be an election made during the time of employment. Aronson was discharged previous to her making the election. Therefore, no right was vested nor denied by NYCERS refusal to allow a post-employment election to Plan B. NYCERS had no duty to Aronson to conduct a hearing on matters concerning retirement benefits after the time that she was discharged from a city-service position.

Additionally, Aronson was represented by counsel from the time of her allergic reaction throughout the disciplinary hearings, eventual discharge from city-service, and during Workers' Compensation hearings. Specifically, Aronson sought legal help from her union with immediacy while pursuing her Workers' Compensation claim and she was represented by her union during the disciplinary hearing held by the HRA which ultimately recommended her dismissal. Aronson also acknowledges the fact that she was filing a lawsuit during the HRA's disciplinary hearing. It is apparent from the record that under the advice of counsel, Aronson chose not to pursue an appeal of her dismissal or inquire at all about the effects of termination upon her pension rights.

I find it unreasonable, however, that Aronson herself did not inquire about the status her pension rights upon being terminated. The very nature of pension rights are imbedded in the duration of service an employee renders. When service is ended by involuntary dismissal, a failure to in-

---

**4.** Section § 13–173(a)(2) of the Administrative Code explicitly requires that in order to qualify for a vested retirement benefit, a member must be a Plan B member "at the time of such discontinuance." Aronson was a Plan A member at the time of her discontinuance from city-service. Thus, her ineligibility for a vested retirement benefit accrued on the date of her dismissal, June 1, 1983. Aronson avers her belief that continued Workers' Compensation coverage evi-

denced continued rights under NYCERS. This assertion is illogical, however, for the two are mutually exclusive. Aronson's rights to Workers' Compensation may evidence continued "membership" in NYCERS, but any possible rights to a retirement benefit under Plan B were lost when Aronson left city-service without effectively either vesting under or making an election to switch to Plan B before city-service terminated. Administrative Code § 13–173.

quire as to the effects on pension rights seems unconscionable. Instead, Aronson chose to pursue an appeal of her Workers' Compensation claim as her sole remedy. It cannot be the duty of this court to retain jurisdiction over an action concerning a denial of due process rights which Aronson herself chose not to protect.

Thus, under all of Aronson's theories, her cause of action accrued on the day of her dismissal, June 1, 1983, since on that day she first could have maintained a suit based on the claim that NYCERS deprived her of a property right. There is no claim that the union breached its duty to fairly represent her. *See King v. New York Tel. Co.*, 785 F.2d 31, 33–34 (2d Cir.1986) (cause of action accrues when plaintiff could first maintained suit unless union representing plaintiff acted dishonestly and in breach of duty for fair representation). Moreover, on that day, Aronson "knew or had reason to know" that her pension rights were affected by her dismissal. *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.), *cert. denied sub nom, Nassau County Republicans Committee v. Cullen*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The requirement of being in city-service in order to switch from Plan A to Plan B, is codified in the Administrative Code and outlined in the NYCERS informational booklet available to all NYCERS members and as such Aronson is presumed to have knowledge of the above.

Finally, Aronson cannot claim that the three year statute of limitation should be tolled. NYCERS did not "conceal its acts" and the city-service requirement was not inherently unknowable. *See United States v. Sams*, 521 F.2d 421, 429 (3d Cir.1975) (statute of limitations begins to run when wrongful conduct by government ceases unless claimant does not know, and in exercise of reasonable diligence cannot learn, that he has been injured by the government's allegedly wrongful conduct.) On the contrary, Aronson could readily have ascertained that her dismissal affected her ability to switch from Plan A to Plan B by simply requesting an informational booklet delineating plan member rights. Instead, Aronson waited five years to write a letter to NYCERS requesting permission to withdraw from Plan A and to elect Plan B, and another year to institute action. This is wholly unreasonable under the circumstances.

For the foregoing reasons, motion for summary judgment is granted in favor of NYCERS. Aronson's claims are hereby dismissed as time-barred and complaint is thus dismissed in its entirety.

SO ORDERED.