Paul FLEISCHMAN, Plaintiff,

v.

William GRINKER, Commissioner of the New York City Human Resources Administration, New York City Human Resources Administration, Harold Herkommer, Executive Director of the New York City Employees' Retirement System, and the New York City Employees' Retirement System, Defendants.

No. 89 Civ. 1759 (PKL).

United States District Court, S.D. New York.

Aug. 5, 1991.

Kreisberg & Maitland (Gary Maitland, of counsel), New York City, for plaintiff.

Victor A. Kovner, Corp. Counsel of City of New York (Charles L. Finke, of counsel), New York City, for defendants.

## OPINION AND ORDER

LEISURE, District Judge:

This is an action brought pursuant to 42 U.S.C. § 1983, alleging violations of the United States and New York State Constitutions, and seeking various forms of declaratory and injunctive relief. The parties have now cross-moved for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

### Background

The facts giving rise to this action are largely undisputed. Plaintiff Paul Fleischman was employed as a caseworker with defendant New York City Human Resources Administration ("NYCHRA") beginning in 1967, and in 1968 plaintiff became a member of defendant New York City Employees' Retirement System ("NYCERS"), choosing to enroll in the Career Pension Plan ("Plan A"). In December 1983, plaintiff was confronted with charges that he had made unwanted sexual advances while performing his official duties. The three instances charged involved unrelated females, one a client,[1] one a co-

---

**1.** "Specification I" charged that during the course of a visit by plaintiff to the residence of one Sara Berkowitz, an applicant for homemaking services, plaintiff told Mrs. Berkowitz "You look lonely," told her that he was divorced or separated from his wife and liked to flirt, asked if she had ever had an orgasm and stated that he would show her how to have an orgasm, told her that he would buy her a present, took Mrs. Berkowitz into a room where he pulled down the shades, sat on the bed and kissed her, and when Mrs. Berkowitz told him she would report

worker,[2] and one a client's daughter,[3] and all took place in November 1983. The NYCHRA Inspector General's office thereafter began an investigation.

The investigation included, *inter alia*, interviews with the women involved, a survey of plaintiff's other clients, and an interview in August 1984 with plaintiff. Following the completion of this investigation, the investigator drafted formal charges recommending plaintiff's dismissal, and plaintiff was served with the charges in September 1984. During this time, plaintiff continued to receive full pay from NYCHRA.

Pursuant to New York State Civil Service Law and a collective bargaining agreement, a "Step I" hearing was held on April 15, 1985, before Conference Officer Paul D. Shur. Plaintiff was represented by his union representative, Henry Coto, of the Social Services Employees' Union. Plaintiff and Mr. Coto spoke at the hearing, and, on April 16, 1985, Conference Officer Shur issued a report finding the charges substantiated, and recommending that plaintiff be dismissed.

Plaintiff, with his union's consent, thereafter waived his right to a hearing under New York State Civil Service Law § 75, and elected to follow the collective bargaining grievance procedure. Pursuant to this procedure, a "Step II" hearing was held on May 23, 1985, before Hearing Officer Peter Zito of the NYCHRA Office of Labor Relations. Plaintiff was present and represented by a union representative. Plaintiff denied all charges, except that he admitted that he was guilty of a mild indiscretion with respect to Specification II.

In a report dated June 10, 1985, approved by John R. Lewis, Assistant Administrator for the NYCHRA Office of Labor Relations, plaintiff's grievance was denied and the penalty of dismissal upheld. The report stated that a copy of the determination would be forwarded to the Office of Personnel Services for appropriate action. The collective bargaining agreement applicable to plaintiff provides that the agency head has the power to impose discipline, including dismissal, at the completion of the Step II process.

On June 17, 1985, plaintiff and plaintiff's union appealed the denial of his grievance, and, on July 8, 1985, NYCHRA Administrator/Commissioner George Gross approved the Step II determination and authorized plaintiff's dismissal. By letter dated July 15, 1985, plaintiff was informed of his dismissal "effective at the close of business today."

Plaintiff thereafter appealed his dismissal in a "Step III" hearing, at which plaintiff's union representative and the NYCHRA investigator spoke. The Step III hearing officer, in a report dated August 21, 1985, found that the procedures used by NYCHRA in imposing the penalty of dismissal were appropriate, and concluded that dismissal was warranted. Plaintiff and his union then requested impartial arbitration of plaintiff's grievance. The arbitrator heard testimony from plaintiff and from the investigator, as well as other evidence, and, in a decision dated July 18, 1986, determined that plaintiff had been dismissed in accordance with the collective bargaining agreement.

During the period from late 1983 through July 1986, plaintiff was not individually notified by any of the defendants that his dismissal from city service for misconduct would make him ineligible for certain pension benefits. Plaintiff did not seek advice during this period from anyone regarding the effect that his dismissal

his behavior plaintiff told her "We'll both get *into trouble if you tell anyone.*"

**2.** "Specification II" charged that during a visit to a home attendant agency plaintiff took a lighted cigarette being smoked by a co-worker and puffed on it. After the co-worker offered plaintiff his own cigarette and told him not to smoke hers, plaintiff stated that he wanted to smoke the cigarette she had been smoking.

**3.** "Specification III" charged that during a visit *to the home of a client, plaintiff remained alone* in the client's home with her daughter although the client was not home. Plaintiff allegedly asked the daughter to sit on the couch with him, asked her to dance with him, and asked her to "go out" with him.

might have on his pension eligibility. A NYCERS handbook for pension members explains, however, that a Plan A member—such as plaintiff—who has more than fifteen but less than twenty years of service credit, and who wants to vest his pension rights, must elect the 55–Year Increased–Service–Fraction Plan ("Plan B") prior to termination of employment. The handbook was not sent to every member, but was widely available to all who requested it. Plaintiff never asked for a copy of the handbook.

In early 1987, plaintiff submitted an application to NYCERS for pension benefits. On April 3, 1987, plaintiff's application was denied, and, in a letter received by NYCERS on September 10, 1987, plaintiff requested clarification of this decision. On September 11, 1987, NYCERS responded by letter, stating that under the applicable law an employee must vest his pension rights under Plan B *prior* to his leaving city employment.[4] Because plaintiff had not done so, he was ineligible for vesting, although he could obtain a refund of his accumulated contributions.

In March 1989, plaintiff commenced this § 1983 action, challenging the denial of his pension application as a violation of his due process rights under the United States Constitution, and asserting pendent claims alleging violations of the New York State Constitution.[5] Specifically, plaintiff claims that the automatic denial of his pension, without a separate hearing or formal determination addressing that issue, and without his previously having been personally informed of the effect of his dismissal on his pension eligibility, constituted a violation of his constitutional rights. Defendants have moved for summary judgment, however, arguing that plaintiff's § 1983 claim accrued upon his dismissal on July 15, 1985, and thus this action—not commenced until three years and eight months later—is

barred by the applicable three-year statute of limitations.[6] Plaintiff has cross-moved, seeking an award of summary judgment on the claims in his amended complaint.

## Discussion

### I. Section 1983 Claim

■ Section 1983 does not provide a specific statute of limitations governing actions brought thereunder. Accordingly, the Supreme Court has held that § 1983 claims are to be controlled by the state statute of limitations for personal injury actions in the state in which the action is brought. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In New York State, the applicable statute is the three-year statute of limitations for general personal injury actions. *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (holding that the statute of limitations for § 1983 actions in New York State is the three-year limit codified at Civil Practice Law § 214(5)). However, federal law determines the date on which the statutory period accrues. *See Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The Second Circuit has repeatedly held that a claim brought under § 1983 accrues when the plaintiff " 'knows or has reason to know' of the injury that is the basis of the action." *Cullen, supra*, 811 F.2d at 725 (quoting *Pauk v. Board of Trustees of City University of New York*, 654 F.2d 856, 859 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982)); *see also Barrett v. United States*, 689 F.2d 324, 333 (2d Cir. 1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). The Second Circuit has strictly applied statutes of limitation in § 1983 actions. *See Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir.1990) (holding that a § 1983 action was barred by

---

**4.** Section 13–173(a)(2) of the New York City Administrative Code explicitly requires that, in order to qualify for a vested retirement benefit, a pension member must be a Plan B member "at the time of such discontinuance."

**5.** Plaintiff does not contest the propriety of his dismissal.

**6.** Defendants also make their summary judgment argument based on substantive grounds. Given the Court's holding with regard to the statute of limitations issue, however, the Court need not consider that alternative argument.

the statute of limitations where the action was brought three years and one day after the date of accrual); *see also Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980) ("Statutes of limitation are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system.").

Plaintiff concedes that the law is clear as to the three-year length of the statutory period. However, plaintiff argues that his claim did not accrue until his application for pension benefits was denied on April 3, 1987, or, at the earliest, on July 18, 1986, when the arbitrator held that plaintiff had been properly dismissed. In either case, plaintiff asserts, this action was timely commenced in March 1989. Defendants respond by noting that plaintiff was dismissed on July 15, 1985, and it was as of that date that plaintiff became ineligible to vest his pension. Therefore, defendants argue, plaintiff's claim accrued on July 15, 1985, and thus this action, commenced more than three years later, is barred by the statute of limitations.

The Court finds defendants' argument persuasive. Plaintiff was unambiguously dismissed, "effective at the close of business today," on July 15, 1985, and was promptly informed of that fact. The Court agrees that it was on that date that plaintiff "knew or had reason to know of the injury that is the basis of the action." *Cullen, supra,* 811 F.2d at 725. Judge Duffy, in a very similar case that was recently affirmed by summary order by the Second Circuit, held that a § 1983 action accrues on the date that the city employee is dismissed from city service, and not on the date on which the employee's request for pension benefits is denied. *Aronson v. New York City Employees Retirement System,* 757 F.Supp. 226 (S.D.N.Y.1991),

*aff'd without op.,* 940 F.2d 654 (2d Cir. 1991). In *Aronson,* the plaintiff was dismissed from city service without having elected to shift from Plan A to Plan B, and subsequently sought to vest her pension benefits. When the request was denied, plaintiff commenced a § 1983 action on grounds similar to those in the case at bar. The action was commenced more than three years after plaintiff's dismissal.

Judge Duffy thereafter granted defendant's motion for summary judgment, holding that the NYCERS handbook containing information regarding restrictions on changing retirement plans was available to pension plan members, that defendant NYCERS had no affirmative duty to do more than make the handbook available, and that plaintiff was thus to be charged with constructive knowledge of this information. *Aronson, supra,* 757 F.Supp. at 229; *cf. Russell v. Dunston,* 896 F.2d 664, 670 (2d Cir.) ("New York may require employees who suspect they are permanently disabled to apply for disability retirement when that suspicion arises.... Such an employee needs no notice regarding termination of the time period for applying for disability retirement."), *cert. denied,* — U.S. —, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990). Moreover, Judge Duffy held, it was unreasonable for plaintiff not to have inquired about the status of her pension rights upon being terminated. "The very nature of pension rights are imbedded in the duration of service an employee renders. When service is ended by involuntary dismissal, a failure to inquire as to the effects on pension rights seems unconscionable." *Aronson, supra,* 757 F.Supp. at 229–30. This Court agrees, and finds that plaintiff in the instant case certainly had reason to know [7] that as of the date of his dismissal his pension rights were in jeopardy.[8]

---

**7.** The fact that plaintiff may have "still considered himself an employee of [NYCHRA]," Plaintiff's Rule 3(g) Statement, ¶ 25, *is* irrelevant, where, as here, such a belief following plaintiff's unambiguous dismissal would have been unreasonable as a matter of law.

**8.** Plaintiff complains that he had only 26 business days between the time of his Step II determination on June 10, 1985, and his dismissal on

July 15, 1985, to inquire as to his pension status. Plaintiff's Memorandum of Law in Opposition to Defendant's [*sic*] Motion for Summary Judgment and in Support of His Cross–Motion for Summary Judgment at 18. The Court need not decide whether this was a reasonable period of time, however, as it is entirely irrelevant to the issue at hand. Plaintiff had *three years* follow-

Plaintiff's argument that the running of the statutory period should be tolled is likewise unavailing. "In § 1983 actions filed in New York, 'federal courts [are] obligated not only to apply the analogous New York statute of limitations to ... federal constitutional claims, but also to apply the New York rule for tolling that statute of limitations.' " *Jewell v. County of Nassau*, 917 F.2d 738, 740 (2d Cir.1990) (quoting *Tomanio, supra*, 446 U.S. at 483, 100 S.Ct. at 1794).

Section 201 of the New York Civil Practice Law and Rules ("CPLR") states the general rule:

> An action, including one brought in the name or for the benefit of the state, must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement. No court shall extend the time limited by law for the commencement of an action.

CPLR § 201. New York has codified the circumstances in which the tolling of a statute of limitations is permitted.[9] Those circumstances are not present in the instant case.[10] Plaintiff's voluntary resort to arbitration in an attempt to overturn the decision to dismiss him did not defer the accrual of the statutory period or toll its running. As the Supreme Court stated in the context of a § 1981 action involving the denial of tenure to a college professor:

> [E]ntertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made.... [P]endency of a grievance, or

some other method of collateral review of an employment decision, does not toll the running of the limitations periods. *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980) (emphasis in original) (citing *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976)); *see also Patterson v. General Motors Corp.*, 631 F.2d 476, 485 (7th Cir.1980) (in context of a § 1981 action, "[t]he law is clear that resort to a grievance process under a collective bargaining agreement does not toll the limitations period."), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). In addition, the Supreme Court has held that New York law "does not provide for general tolling during arbitration, but only in situations where the plaintiff is unable to obtain an adjudication on the merits because the remedy is legally unavailable." *Tomanio, supra*, 446 U.S. at 486 n. 7, 100 S.Ct. at 1796 n. 7; *cf. Spannaus v. United States Department of Justice*, 824 F.2d 52, 57 (D.C.Cir.1987) ("where the availability or pendency of an administrative remedy does not bar suit, a suit can be maintained in court—and a cause of action can 'first accrue.' "); *Tuckett v. Police Department of the City of New York*, 708 F.Supp. 77, 78 (S.D.N.Y.1989) (statutory period in § 1983 action is not tolled during period in which plaintiff pursues administrative remedies). Plaintiff thus cannot singlehandedly decide to cause the tolling of the statutory period by electing to pursue a remedy through arbitration. Plaintiff's § 1983 claim therefore accrued upon his dismissal on July 15, 1985, and the running of the statute of limitations on that claim was not tolled by his resort to an arbitral remedy. Accordingly, this action, not commenced until

---

ing his dismissal on July 15, 1985, to inquire as to his pension status and commence an action.

**9.** *See* CPLR 204(a) (tolling where action stayed by court or by statute); CPLR § 207 (tolling where defendant is outside New York when action accrues against him); CPLR § 208 (tolling for infancy or insanity).

**10.** Federal courts may toll a statute of limitations borrowed from state law, "but only where application of the statute of limitations would

frustrate the policy underlying the federal cause of action. Use of the New York statute of limitations in § 1983 actions does not violate such policy." *Jewell, supra*, 917 F.2d at 740 (citations omitted). In addition, the federal doctrine of equitable tolling of the statute of limitations is inapplicable because defendants took no steps to conceal from plaintiff the impact of his termination from city employment. *See Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 49 (2d Cir.1985).

March 1989, is untimely, and must be dismissed.[11]

## II. Pendent Claims

Dismissal of pendent state law claims is appropriate where the federal claims to which they were appended have been dismissed by the Court. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *CL–Alexanders Laing & Cruickshank v. Goldfeld*, 739 F.Supp. 158, 167 (S.D.N.Y.1990) ("Absent exceptional circumstances ... a federal court should refrain from exercising pendent jurisdiction when federal claims are disposed of by summary judgment."). Accordingly, those claims are dismissed for lack of subject matter jurisdiction.

### Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

SO ORDERED.

---

11. Plaintiff further argues that the defendants' alleged violation of plaintiff's due process rights is a continuing one, "since no separate and individual determination has ever been made that pension forfeiture was warranted by plaintiff's misconduct," Affidavit of Gary Maitland, Esq., sworn to on May 1, 1991, ¶ 24, and thus his action is timely. This argument is without legal or factual support, and acceptance of it would render the statute of limitations meaningless, for the statutory period could never run its course. Moreover, plaintiff's amended complaint speaks of the violation of his rights solely in the past tense—there is in essence no allegation of a violation of his rights beyond the initial disqualification of plaintiff's pension eligibility when he was dismissed on July 15, 1985 without having elected Plan B. *See Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).